Young, C.J.
In this case, we are called upon to determine whether the community caretaking exception to the Fourth Amendment’s requirement that a warrant be obtained before a residence can be entered applies to a first-response firefighter answering a 911 call and, if so, whether the firefighter’s entry into defendant’s residence was reasonable in the instant case. We conclude that the community caretaking exception applies to firefighters no less than to police officers when they are responding to emergency situations that threaten fife or property. We also conclude that the firefighter’s actions in this case were reasonable, thus satisfying the community caretaking exception to the warrant requirement. Accordingly, we reverse the decision of the circuit court and the Court of Appeals’ judgment and remand this case to the circuit court for further proceedings consistent with this opinion.
I. FACTS AND PROCEDURAL HISTORY
Defendant, Mark Slaughter, resided in a townhouse in Royal Oak, Michigan.[1] In May 2007, defendant’s *307 neighbor, Kathleen Tunner, saw water running down her basement wall and over her electrical box. She also heard water flowing behind that wall, which adjoined defendant’s townhouse.[2] Tunner attempted to locate defendant by knocking on his door, but he was not home. She then called her townhouse management company in a further attempt to locate defendant. After this attempt failed, Tunner dialed 911. The city of Royal Oak dispatched several firefighters to the townhouse, including Lieutenant Michael Schunck. After consulting with Tunner about her emergency call, Schunck entered defendant’s residence. When he went to the basement to shut off defendant’s water and to assess whether any additional measures needed to be taken to prevent a fire, Schunck observed, in plain view, grow lights and several dozen plants that appeared to be marijuana. He then reported what he saw to the Royal Oak police.
The Royal Oak Police Department dispatched an officer to secure defendant’s townhouse while another officer procured a search warrant. After entering defendant’s townhouse, officers seized 48 marijuana plants, grow lights, a watering system, defendant’s state identification card, books on marijuana horticulture, packaging material, and other drug paraphernalia.
Defendant was charged with manufacturing with the intent to deliver more than 20 but fewer than 200 marijuana plants.[3] The district court bound defendant over as charged, notwithstanding defendant’s claims *308 that the firefighter’s entry into the townhouse violated his Fourth Amendment rights and that he did not exercise dominion and control over the seized marijuana plants.
Although defendant did not appeal the bindover decision, he subsequently filed a pretrial motion to suppress in the circuit court. After hearing testimony and oral argument, the court granted the motion in a written opinion and order. The circuit court concluded that Lieutenant Schunck “did not attempt to hear or see for himself what was causing the problem [that led Tunner to dial 911], nor did he attempt to verify the existence of running water in the wall prior to entering the defendant’s home.” The circuit court also observed that Schunck had indicated that “he would have entered the apartment even if he had shut off the water and/or electrical from the outside” because “he has to investigate the [911] calls to the fullest extent possible____”
The circuit court applied this Court’s decision in People v Tyler[4] and the United States Supreme Court’s decision in Camara v Muni Court of City & Co of San Francisco[5] in concluding that firefighters are required to procure a warrant before entering a building “to prevent a fire from occurring....” Furthermore, it relied on the fact that this Court’s decision in People v Davis,[6] which articulated the community caretaking exception to the Fourth Amendment’s warrant requirement, did not contain “anything related to the investigation of a possible fire hazard.” Accordingly, the court ruled that the firefighters could not avail themselves of the community caretaking exception.
*309 The Court of Appeals affirmed the circuit court’s ruling in a split, unpublished decision, albeit on alternative grounds.[7] First, the majority determined, contrary to the circuit court’s decision, that the community caretaking exception can apply to searches performed by first-response firefighters to abate a possible fire hazard. However, the majority explained that “the record permits the conclusion that the firefighters were simply too quick to enter into defendant’s unit and failed to investigate the complaint” before entering defendant’s residence.[8] Thus, the majority concluded that “there are too many outstanding questions to conclude whether the firefighters acted reasonably” and, therefore, that the circuit court had properly granted the motion to suppress.[9]
The dissenting judge agreed with the majority that first-response firefighters can avail themselves of the community caretaking exception to the Fourth Amendment’s warrant requirement. The dissenting judge, however, concluded that the firefighters had acted reasonably in the instant case, indicating that “[t]he firefighters were faced with a possible emergency situation and they needed to make quick judgments about what to do in order to avoid a potential fire.”[10]
This Court granted the prosecutor’s application for leave to appeal and ordered the parties to brief whether
(1) the actions of firefighters may fall under the “community caretaker” exception to probable cause requirements; (2) the “emergency aid” aspect of the community caretaker exception applies in this case; and (3) the Court of Appeals *310 erred when it held that the firefighters were first obligated to attempt to remedy the condition for which a neighbor called by using means that did not involve entry into the defendant’s home.[11]
II. STANDARD OF REVIEW
A court’s factual findings at a suppression hearing are reviewed for clear error, but the application of the underlying law — the Fourth Amendment of the United States Constitution and article 1, § 11 of the Michigan Constitution — is reviewed de novo.[12]
III. ANALYSIS
A. FOURTH AMENDMENT PRINCIPLES
The Fourth Amendment of the United States Constitution guarantees every person’s right to be free from unreasonable searches and seizures and provides, in its entirety:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[13]
Similarly, article 1, § 11 of the Michigan Constitution provides, in relevant part:
The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any *311 person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation.
This Court has ruled that the Michigan Constitution “is to be construed to provide the same protection as that secured by the Fourth Amendment, absent ‘compelling reason’ to impose a different interpretation.”[14]
Although the entry into defendant’s residence was warrantless, “[u]nder the common law and agreeably to the Constitution search may in many cases be legally made without a warrant. The Constitution does not forbid search, as some parties contend, but it does forbid unreasonable search.”[15] While many warrantless searches are unreasonable pursuant to the warrant requirement,[16] the United States Supreme Court has articulated several instances in which warrantless searches are reasonable. These include searches of automobiles,[17] searches incident to contemporaneous lawful arrests,[18] inventory searches conducted according to established procedure,[19] searches conducted dur *312 ing exigent circumstances,[20] and searches the police undertake as part of their “community caretaking” function.[21]
The instant case involves only the last circumstance listed — searches undertaken as part of a community caretaking function — and requires this Court to determine the scope of that community caretaking exception to the Fourth Amendment’s warrant requirement. Because it is uncontested that the initial search of defendant’s residence was warrantless, we must determine whether the community caretaking exception to the warrant requirement applies.
B. THE COMMUNITY CARETAKING EXCEPTION
The United States Supreme Court first recognized the community caretaking exception to the warrant requirement in Cady v Dombrowski, which involved the constitutionality of the search of the trunk of an out-of-town police officer’s automobile.[22] The police officer was hospitalized after a serious automobile accident, and local police officers arriving on the scene of the accident directed that the injured officer’s vehicle be towed to a private garage. Because the private garage was unsecured, local police sought to locate and safeguard the injured officer’s service revolver. After failing to find the revolver on the officer’s person or in the glove compartment of the vehicle, officers searched the *313 vehicle’s trunk and discovered the revolver, along with evidence of a murder.[23]
Before addressing the legality of the search, the Court explained that police officers often perform certain duties independent of their duty to investigate crimes:
Local police officers ... frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.[24]
In considering the case before it, the Cady Court determined that the officers had acted not to investigate a crime, but out of “concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle.”[25] The Court concluded that searches conducted to further these community caretaking functions do not necessarily require a warrant in order to be reasonable. Once it had determined that the search was not conducted pursuant to an investigation, the Court analyzed the reasonableness of the search within the scope of the officers’ community caretaking functions: the officers “were simply reacting to the effect of an accident — one of the recurring practical situations that results from the operation of motor vehicles and with which local police officers must deal every day.”[26] In the end, the Court held that the warrantless search was a reasonable exercise of the officers’ community caretaking *314 functions and concluded that their search of the vehicle did not violate the Fourth Amendment:
Where, as here, the trunk of an automobile, which the officer reasonably believed to contain a gun, was vulnerable to intrusion by vandals, we hold that the search was not “unreasonable” within the meaning of the Fourth and Fourteenth Amendments.[27]
This Court has recognized the community caretaking exception as applicable under Michigan law. In People v Davis, we explained:
The police perform a variety of functions that are separate from their duties to investigate and solve crimes. These duties are sometimes categorized under the heading of “community caretaking” or “police caretaking” functions. When police, while performing one of these functions, enter into a protected area and discover evidence of a crime, this evidence is often admissible....
[According to the United States Supreme Court, the defining characteristic of community caretaking functions is that they are totally unrelated to the criminal investigation duties of the police.
Federal and state courts have included a variety of police activities under the heading of community caretaking functions. Courts have held that impoundment of automobiles and inventory searches of them, as in Cady, responding to missing vehicle complaints, investigating noise complaints, and searching an unconscious person for identification are community caretaking functions.[28]
*315 Davis further explained that, because “[community caretaking activities are varied and are performed for different reasons,”[29] not all conduct that falls within the police’s community caretaking functions can be judged equally. Indeed, shortly after issuing the Davis decision, this Court listed several additional types of intrusions that courts have justified pursuant to the exercise of community caretaking functions: *316 Accordingly, courts must consider the reasons that officers are undertaking their community caretaking functions, as well as “the level[] of intrusion the police make while performing these functions,” when determining whether a particular intrusion to perform a community caretaking function is reasonable.[31] For instance, “a police inventory of a car is much less intrusive than a police entry into a dwelling.”[32] This is because the privacy of the home stands “ ‘[a]t the very core’ ”[33] of the Fourth Amendment and because “[i]n [no setting] is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual’s home . .. .”[34] Thus, the threshold of reasonableness is at its apex when police enter a dwelling pursuant to their community caretaking functions.
*315 [CJourts have included a multiplicity of police functions within the meaning of the community caretaking function, including entering an apartment to remove a former girlfriend following a domestic dispute, removing an intoxicated person from the street, entering an abandoned boat to ascertain ownership and the safety of the mariners, responding to a missing vehicle complaint, searching an unconscious person for identification, and responding to persons likely to be in need of emergency aid.[30]
*316 C. FIREFIGHTERS AND THE COMMUNITY CARETAKING EXCEPTION
This Court asked the parties to brief whether the community caretaking exception to the warrant requirement applies to firefighters’ actions. We conclude that the community caretaking exception to the warrant requirement applies when a firefighter, responding *317 to an emergency call involving a threat to life or property, reasonably enters a private residence in order to abate what is reasonably believed to be an imminent threat of fire inside. Therefore, once it is determined that a firefighter’s entry into a private residence was an exercise of community caretaking functions, and not an exercise of investigative functions, we must consider the reasonableness of the entry within the context of that community caretaking purpose.
United States Supreme Court caselaw specifically pertaining to firefighters supports this conclusion. In Michigan v Tyler, the Court concluded that “the Fourth Amendment extends beyond the paradigmatic entry into a private dwelling by a law enforcement officer in search of the fruits or instrumentalities of crime.”[35] Indeed, “there is no diminution in a person’s reasonable expectation of privacy nor in the protection of the Fourth Amendment simply because the official conducting the search wears the uniform of a firefighter rather than a policeman . . . .”[36]
The principle most relevant to this case from those decisions applying the Fourth Amendment’s warrant requirement to firefighters is that the Fourth Amendment applies equally to police officers and firefighters. It thus follows that if a police officer can avail himself of an exception to the warrant requirement, a firefighter can likewise avail himself of an exception if the circumstances permit. Indeed, Tyler is premised on just that principle: that the exceptions to the warrant require *318 ment apply no less to firefighters than to police officers who have responded to 911 calls requiring imminent action to prevent harm to persons or property.
Like decisions applying the community caretaking exception to police officers’ actions, Tyler distinguished a firefighter’s community caretaking functions from his investigative functions.[37] As a general rule, “official entries to investigate the cause of a fire must adhere to the warrant procedures of the Fourth Amendment.”[38] Nevertheless, “it would defy reason to suppose that firemen must secure a warrant or consent before entering a burning structure to put out the blaze. And once in a building for this purpose, firefighters may seize evidence of arson that is in plain view.”[39] In short, under Tyler, the purpose of a firefighter’s initial entry into a building is crucial in determining whether a warrant is required for that entry.
The Tyler Court’s application of the Fourth Amendment to firefighters fits directly into the purposes of the community caretaking exception. Thus, as Cady and Tyler illustrate, we must analyze the reasonableness of the initial intrusion in light of the scope of the intrusion and the firefighter’s purpose in entering the residence. If the purpose of a firefighter’s initial entry into a private residence is to abate an imminent threat of fire, then a warrantless entry is lawful under the Fourth Amendment as long as it is reasonable. Contrarily, if the *319 purpose of a firefighter’s entry is solely to investigate a crime, then a warrant is required unless a different exception to the warrant requirement applies. Tyler’s holding and rationale lead inexorably to the conclusion that the community caretaking exception applies to firefighters. Therefore, we hold that the community caretaking exception applies to firefighters.[40]
Application of the community caretaking exception does not provide firefighters with a blank check to enter private residences; rather, it only authorizes reasonable intrusions. Because “[c]ommunity caretaking functions are varied and are performed for different reasons,”[41] reviewing courts must tailor their analysis to the specifics of a particular intrusion before determining whether it is reasonable. Although neither Michigan caselaw nor that of the United States Supreme Court has specifically analyzed what factors affect whether a firefighter’s intrusion into a private residence is reasonable, there is ample authority within the caselaw applying specific factors in related circumstances that allows this Court to articulate the standards that both protect individuals’ Fourth Amendment rights and allow firefighters to perform their duty to abate serious fire hazards.
As stated, the privacy of the home stands at the very core of the Fourth Amendment’s protections, and the zone of privacy is most clearly defined “when bounded by the unambiguous physical dimensions of an individual’s home.”[42] In determining whether firefighters *320 acted reasonably in entering an individual’s home, a reviewing court must first consider the firefighters’ basis for making the intrusion — namely, whether, acting in good faith,[43] they “possess [ed] specific and articulable facts” leading them to the conclusion that their actions were necessary to abate an imminent threat of fire inside the private residence.[44] Their belief in the necessity of their intrusion need not be “ironclad,” only “reasonable.”[45] Furthermore, courts must not engage in a “hindsight determination” that an entry is unreasonable simply because no imminent hazard actually existed.[46] Rather, courts must determine whether an entry was reasonable on the basis of the circumstances known to the firefighters at the time of entry.[47]
Next, courts should consider the scope of the entry, which “must be limited to the justification therefor” *321 and may not extend beyond what “is reasonably necessary to determine” whether the imminent threat of fire exists inside the private residence.[48] If firefighters do, in fact, find such a threat inside the residence, they may “remain in [the] building for a reasonable time” to abate the hazard and to “investigate [its] cause,” because investigating the cause of the hazard “may be necessary to prevent its recurrence.”[49]
Finally, in determining whether a particular entry is reasonably necessary, firefighters are not constrained to follow the least intrusive means of abating the imminent threat of fire. Indeed, that firefighters could have abated the fire hazard “by ‘less intrusive’ means does not, by itself, render the search unreasonable.”[50] Rather, reviewing courts must consider whether the means and scope of entry were themselves reasonable under the totality of circumstances, not whether they were perfect.
D. APPLICATION
Because the community caretaking exception is not a blank check for warrantless entry by firefighters, we apply the foregoing analysis to determine whether the firefighters’ entry into defendant’s residence was reasonable.
As stated, we must first analyze the firefighters’ basis for entering defendant’s private residence. The circuit court’s findings of fact are relevant here and are not clearly erroneous:
*322 [Lieutenant Schunck] was called to [defendant’s townhouse], in the City of Royal Oak. The call was based upon a report of a possible electrical problem with running water. Upon arrival, he spoke to a neighbor [Tunner], who indicated she suspected water was running between a common wall, which shares an electrical panel. [Schunck] attempted to make contact with the owner of the neighboring apartment, but was unsuccessful. If there was water running onto an electrical box, it presented a life hazard and structure fire situation. [Schunck] made entry into the defendant’s home to see if there was water running into the electrical box.. .. [Schunck] went into the apartment to check for running water, and shut off the electricity. It was possible ... to shut off the water to the entire complex from outside, but the general practice is to shut off the individual apartment.
Upon cross-examination, [Schunck] indicated he did not see or hear any water before or after entering the apartment. In fact, he admitted he did not find any running water in the apartment. [Schunck] also admitted he did not shut off the water of the neighbor, nor did he check that apartment for water or dampness. He also admitted he did not turn off the electrical box for either apartment. [Schunck] was not sure where the meter [was] which would have permitted him to shut off the electricity without entering the apartment.
Upon re-direct examination, [Schunck] indicated he was not sure if he entered [Tunner’s] apartment. He also indicated he would have entered [defendant’s] apartment even if he had shut off the water and/or electrical from the outside. He testified he has to investigate the calls to the fullest extent possible....
At no point did the circuit court indicate that it disbelieved Schunck’s testimony. Schunck also testified that he shut off the water to defendant’s townhouse and that he did so from the basement of defendant’s townhouse.
It is clear from Schunck’s testimony that he acted in good faith. There is no indication that his entry into *323 defendant’s residence was pretextual, and only upon entering defendant’s basement to shut off the water to defendant’s residence did Schunck see what appeared to be contraband in plain view.
Of course, good faith alone is not sufficient to satisfy the requirements of the Fourth Amendment; firefighters must “possess specific and articulable facts” leading them to the conclusion that their imminent action is necessary to abate the threat to persons or property inside the private residence.[51] In this case, Schunck knew of the 911 call and the information it contained. Moreover, he spoke with Tunner, who reported that she saw water coming into her basement from the wall that she shared with defendant and that she heard water flowing behind that wall.[52] Schunck had no reason to disbelieve Tunner’s assertion, although there was no evidence that he corroborated Tunner’s statement by witnessing or hearing the water himself. Nevertheless, Tunner’s report of water leakage next to her electrical box was specific and articulable evidence supporting Schunck’s conclusion that his imminent action was necessary to abate a condition inside defendant’s residence that he reasonably believed was a threat to persons or property.
Furthermore, the fact that the townhouse complex contained several units attached to each other elevated the imminence of the potential hazard. Schunck explained that the attached units were “real close together” and that they “share[d] electrical panels in the basement at the bottom of these [common] walls.” *324 Moreover, because a “high density” of people lived in “all [the] connected apartments,” Schunck explained that “a definite life hazard and possible structur[al] fire type situation” existed. These facts further supported Schunck’s decision to enter defendant’s residence.
We conclude that, in assessing whether an entry was reasonable, courts must also determine whether the scope of the entry was “limited to the justification therefor” or whether it extended beyond what was “reasonably necessary” to abate the hazard inside the private residence.[53] In this case, Schunck entered defendant’s townhouse by having one of his crew enter the townhouse through a window in order to let him enter through the front door. Moreover, Schunck shut off the water to defendant’s townhouse from the basement, which was where Tunner believed the water was flowing and where Schunck found, in plain view, the plants he believed to be contraband.[54] Therefore, the extent of Schunck’s entry and search of defendant’s residence was limited to the area of the residence that the available information indicated was the location of the hazard.
The Court of Appeals panel determined that Schunck entered without considering alternative, less intrusive means of abating the hazard. This kind of post hoc analysis is inconsistent with the principles for assessing the reasonableness of entry that we announce today.
*325 Although it was possible for Schunck to turn off the water from outside defendant’s residence, several facts led Schunck to the conclusion that actual entry into defendant’s residence was necessary. First, because defendant’s residence was physically attached to several other units, Schunck sought to minimize disruption to defendant’s neighbors. Schunck believed that turning off defendant’s water from outside the unit would have shut off the water to the entire complex. Generally, he testified, the fire department “isolate[s] the individual problem in the apartment and shut[s] [the water] off from the inside.” Second, even if he had turned off the water to defendant’s residence from the outside, Schunck testified that “[t]here’s no question” he would have still entered the residence because, as an agent of the city of Royal Oak, he needed to be sure the situation was “totally safe.” Accordingly, there is no indication that Schunck’s entry exceeded what he thought necessary to abate what he believed to be the fire hazard inside defendant’s townhouse.
On the basis of all these facts, we conclude that Schunck acted reasonably in entering defendant’s residence pursuant to an emergency call. The Fourth Amendment does not prevent firefighters responding to emergency calls from undertaking their duty to protect the public from imminent danger. However, we emphasize that the Fourth Amendment does not give firefighters a blank check to enter and search private residences, and we caution reviewing courts to apply these principles carefully in order to ensure the appropriate protection of private residences under the Fourth Amendment. The Fourth Amendment strikes a careful balance, as seen in the instant case, between a citizen’s reasonable expectation of privacy with his similarly reasonable expectation that emergency personnel will *326 act swiftly to protect his residence from the threat to persons or property therein.
E. RESPONSE TO THE DISSENT
In addition to the responses made to the dissent throughout this opinion, we offer the following general discussion of the dissent’s criticisms of our holding.
One of the recurring themes of the dissent is that this opinion does not address how the various community caretaking functions fit within the Fourth Amendment. The response to this criticism is simple: this case only addresses how to apply the Fourth Amendment when a firefighter enters a private residence that he believes to be under the imminent threat of fire. We leave all other variants and all other applications of the community caretaking exception for another day.
For this reason alone, the dissent’s criticism of this opinion for “not wad[ing] into [the] judicial morass” of the distinctions among the community caretaking doctrine, the emergency doctrine, and the emergency aid doctrine is off the mark. Moreover, the dissent’s understanding of these doctrines is needlessly complex because it characterizes them as separate and distinct exceptions to the warrant requirement, rather than as aspects of the community caretaking exception.[55] Readers can judge for themselves whether this opinion *327 thoroughly examined the law relevant to deciding this case. The central purpose of a state court of last resort is not merely to bemoan that “the scope of [the community caretaking] exception[] is far from clear,”[56] but to establish clear principles of law, consistent with the Constitution, that subsequent courts can apply as the facts of any particular case dictate.
By contrast, the dissent would further muddle Fourth Amendment doctrine by deriving several separate exceptions to the warrant requirement based on the exercise of community caretaking functions. But if there is anything clear from the United States Supreme Court’s articulation of the community caretaking exception, it is that actions pursuant to community care-taking functions qualitatively differ from actions pursuant to criminal investigations. This is the central basis for today’s holding.
The dissent would also hold that the community caretaking exception does not apply to entry into private residences. A central part of the dissent’s rationale appears to be that because the decision identifying the community caretaking exception, Cady v Dombrowski, “included language that sharply distinguished automobile searches from searches of private residences,” the exception cannot encompass searches of private residences. However, the dissent can identify no United States Supreme Court decision that rejected the application of the community caretaking exception to private residences. Indeed, the dissent admits, in its discussion of the “emergency” and “emergency aid” exceptions, that firefighters acting pursuant to their community *328 caretaking functions may, under certain circumstances, enter a private residence.
The dissent claims that this opinion “extinguishes the emergency and emergency-aid exceptions to the warrant requirement in Michigan. . . ,”[57] Far from it. We recognize that these different aspects of the community caretaking exception apply the exception to specific circumstances. Our opinion today merely recognizes that in all these circumstances, we must apply the standard of reasonableness that governs all Fourth Amendment cases.[58] Thus, while different circumstances will lead to different conclusions regarding the reasonableness of a particular search,[59] we are only constitutionally required to forbid unreasonable searches.
The reasonableness of the instant entry turns on the fact that the responding firefighters believed that there *329 existed the imminent threat of an electrical fire in defendant’s residence.[60] The firefighters reasonably believed that the danger posed an imminent threat to property or life, and they acted reasonably in abating that threat.
IV CONCLUSION
We conclude that the community caretaking exception to the Fourth Amendment’s warrant requirement applies no less to firefighters than to police officers engaged in abating emergency conditions that concern the protection of life and property. Thus, first-response firefighters may avail themselves of the community caretaking exception to the Fourth Amendment’s warrant requirement. In this case, the firefighter entered defendant’s residence in order to abate what he reasonably believed was the imminent threat of a serious electrical fire. We conclude that he acted reasonably in doing so and that, accordingly, the circuit court and the Court of Appeals majority erroneously suppressed the evidence he discovered in plain view during this entry. We therefore reverse the circuit court’s decision and the Court of Appeals judgment and remand this case to the circuit court for entry of an order denying defendant’s motion to suppress and for further proceedings consistent with this opinion. We do not retain jurisdiction.
Markman, Hathaway, Mary Beth Kelly, and Zahra, JJ., concurred with Young, C.J.

 Although one of the issues at defendant’s preliminary examination concerned whether defendant actually resided at the Royal Oak town *307 house, defendant admitted during his testimony at the suppression hearing that he had lived at the townhouse for “a year or two” before his arrest.

 Defendant’s and Tunner’s townhouses are adjoining units in a single structure containing approximately 12 individual units.

 MCL 333.7401(2)(d)(ii).

 People v Tyler, 399 Mich 564; 250 NW2d 467 (1977), aff'd sub nom Michigan v Tyler, 436 US 499 (1978).

 Camara v Muni Court of City & Co of San Francisco, 387 US 523; 87 S Ct 1727; 18 L Ed 2d 930 (1967).

 People v Davis, 442 Mich 1; 497 NW2d 910 (1993).

 People v Slaughter, unpublished opinion per curiam of the Court of Appeals, issued March 16, 2010 (Docket No. 287459).

 Id. at 5.

 Id. at 6.

 Id. at 2-3 (Meter, J., dissenting).

 People v Slaughter, 486 Mich 1069 (2010).

 People v Williams, 472 Mich 308, 313; 696 NW2d 636 (2005).

 The Fourth Amendment was incorporated to the states in Mapp v Ohio, 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961).

 People v Collins, 438 Mich 8, 25; 475 NW2d 684 (1991), citing People v Perlos, 436 Mich 305; 462 NW2d 310 (1990), People v Chapman, 425 Mich 245; 387 NW2d 835 (1986), People v Catania, 427 Mich 447; 398 NW2d 343 (1986), People v Smith, 420 Mich 1, 23 n 16; 360 NW2d 841 (1984), and People v Nash, 418 Mich 196; 341 NW2d 439 (1983).

 Carroll v United States, 267 US 132, 146; 45 S Ct 280; 69 L Ed 543 (1925).

 See Katz v United States, 389 US 347, 357; 88 S Ct 507; 19 L Ed 2d 576 (1967).

 See California v Carney, 471 US 386; 105 S Ct 2066; 85 L Ed 2d 406 (1985).

 See Chimel v California, 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969); Maryland v Buie, 494 US 325; 110 S Ct 1093; 108 L Ed 2d 276 (1990).

 See South Dakota v Opperman, 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976).

 See Minnesota v Olson, 495 US 91; 110 S Ct 1684; 109 L Ed 2d 85 (1990). The exigent circumstances exception to the warrant requirement is inapplicable to this case. “When the police act pursuant to the exigent circumstances exception, they are searching for evidence or perpetrators of a crime.” Davis, 442 Mich at 24.

 See Cady v Dombrowski, 413 US 433; 93 S Ct 2523; 37 L Ed 2d 706 (1973).

 Id. at 435-437.

 Id.

 Id. at 441.

 Id. at 447.

 Id. at 446.

 Id. at 448.

 Davis, 442 Mich at 20-23. Part of an officer’s community caretaking function is the rendering of emergency aid to injured persons. This Court *315 has concluded that, in entering a dwelling to render emergency aid to a person inside, “[an] officer must be motivated primarily by the ‘perceived need to render aid or assistance’ ” and “may not do more than is reasonably necessary to determine whether a person is in need of assistance, and to provide that assistance.” City of Troy v Ohlinger, 438 Mich 477, 484; 475 NW2d 54 (1991), quoting State v Prober, 98 Wis 2d 345, 365; 297 NW2d 1 (1980). This Court has further required entering officers to “possess specific and articulable facts that lead them to” the conclusion that someone inside “is in need of immediate aid.” Davis, 442 Mich at 25-26. Proof of someone’s needing assistance need not be “ironclad,” only “reasonable.” Michigan v Fisher, 558 US 45,_; 130 S Ct 546, 549; 175 L Ed 2d 410, 414 (2009). While there is no evidence that the firefighters who entered defendant’s residence possessed specific and articulable facts that led them to the conclusion that someone inside was in need of immediate aid, these principles are instructive in determining whether they believed imminent action was necessary to prevent a threat that placed persons and property in danger.

 Davis, 442 Mich at 25.

 In re Forfeiture of $176,698, 443 Mich 261, 273-274; 505 NW2d 201 (1993) (citations omitted). In that case, this Court “deeline[d] to employ the community caretaking exception” because “[b]oth of the officers who entered the home testified that the purposes of the entry were to search for intruders and to secure the premises in an effort to thwart an *316 attempted escape,” not to undertake any of the listed community caretaking functions. Id. at 274-275. The case’s discussion of community caretaking functions, while dicta, nevertheless illustrates that, contrary to the dissent’s suggestion that the community caretaking exception applies on its face to only a narrow and undefined subcategory of cases involving police community caretaking functions, this Court has considered several different — and unrelated — community caretaking functions when determining whether a warrantless search is reasonable.

 Davis, 442 Mich at 25.

 Id.

 Payton v New York, 445 US 573, 589-590; 100 S Ct 1371; 63 L Ed 2d 639 (1980), quoting Silverman v United States, 365 US 505, 511; 81 S Ct 679; 5 L Ed 2d 734 (1961).

 Payton, 445 US at 589.

 Michigan v Tyler, 436 US 449, 504; 98 S Ct 1942; 56 L Ed 2d 486 (1978).

 Id. at 506; see also Camara, 387 US at 530 (“It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior.”).

 Similarly, Michigan statutory law recognizes the same emergency/investigation distinction, providing firefighters in uniform and under supervision the authority to “take all necessary steps and requirements to protect persons and property until [a] dangerous condition is abated,” MCL 29.7a(2), as well as the separate authority to “investigate causes and effects related to dangerous conditions,” MCL 29.7a(3).

 Tyler, 436 US at 508.

 Id. at 509.

 Our decision here is expressly limited to the question whether the community caretaking exception applies to firefighters. We leave to another day the determination whether that exception may extend to other emergency first responders.

 Davis, 442 Mich at 25.

 Payton, 445 US at 589-590.

 See, e.g., Colorado v Bertine, 479 US 367, 374; 107 S Ct 738; 93 L Ed 2d 739 (1987) (“[Reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure.”).

 Davis, 442 Mich at 25.

 Fisher, 558 US at _; 130 S Ct at 549; 175 L Ed 2d at 414.

 Id.

 See id. This standard is consistent with the United States Supreme Court’s application of the warrant requirement to administrative searches in Camara. The search conducted in Camara was one to administer “fire, health, and housing code inspection programs. . ..” Camara, 387 US at 533. While the administration of fire, health, and housing code inspection programs is important to public safety, the application of the warrant requirement to the “routine systematized inspection” involved in Camara turned in part on the fact that “[i]t has nowhere been urged that fire, health, and housing code inspection programs could not achieve their goals within the confines of a reasonable search warrant requirement.” Id. As stated, the application of the community caretaking exception in this case is limited to situations in which firefighters reasonably believe that their entry is necessary to abate an immediate threat to persons or property.

 See Davis, 442 Mich at 26.

 Tyler, 436 US at 510. Investigating a fire can reveal “continuing dangers such as faulty wiring or a defective furnace.” Id. Accordingly, the Court determined that “officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished.” Id. (emphasis added).

 Cady, 413 US at 447.

 Davis, 442 Mich at 25.

 Contrary to the dissent’s assertion, the fact that Tunner did not immediately call 911, but instead sought to reach defendant, does not negate Schunck’s belief in the imminence of the threat of electrical fire, nor does it make that belief objectively unreasonable.

 Id. at 26.

 There is no indication that the marijuana plants were hidden from plain view in the basement of defendant’s residence. Accordingly, if Schunck’s entry into defendant’s basement was lawful, then the plain view exception to the warrant requirement allowed this evidence to provide probable cause for the subsequent search warrant, pursuant to which were seized the marijuana plants along with other related evidence found elsewhere in defendant’s residence. See Arizona v Hicks, 480 US 321; 107 S Ct 1149; 94 L Ed 2d 347 (1987).

 Post at 334-335. Notwithstanding the dissent’s protestations otherwise, today’s holding is consistent with other courts’ applications of the community caretaking exception. For example, the Washington Supreme Court has determined the “community caretaking function exception to encompass not only the ‘search and seizure’ of automobiles, but also situations involving either emergency aid or routine checks on health and safety.” State v Kinzy, 141 Wash 2d 373, 386; 5 P3d 668 (2000). Similarly, the Illinois Supreme Court recognized that “[c]ourts use the term ‘community caretaking’ to uphold searches or seizures as reasonable under the fourth amendment when police are performing some function *327 other than investigating the violation of a criminal statute.” People v McDonough, 239 Ill 2d 260, 269; 940 NE2d 1100 (2010).

 Post at 334.

 Post at 348.

 The United States Supreme Court has held that if no exception to the warrant requirement applies, a warrantless search is unreasonable. Katz, 389 US at 357. This proxy for what constitutes a reasonable search nevertheless applies the same Fourth Amendment standard: reasonableness.

 As the dissent points out, post at 349 n 62, the Davis Court explained that “[w]hile categorizing these different activities under the heading of ‘community caretaking functions’ may be useful in some respects, it does not follow that all searches resulting from such activities should be judged by the same standard.” Davis, 442 Mich at 25. When read in its context — following an extensive (but not necessarily exhaustive) list of different community caretaking functions — it is clear that the Davis Court meant simply that the circumstances of each search must be taken individually to determine whether the search was reasonable. There is no indication that the Davis Court meant to depart from the universal application of the reasonableness standard to all Fourth Amendment inquiries; rather, it sought to apply “standards specifically applicable to emergency aid entries.” Id. We do not disturb the standards that the Davis Court applied in that context. We simply articulate standards applicable to situations in which a firefighter enters a private residence to abate what he believes to be an imminent threat of fire.

 The dissent criticizes this opinion for “fail[ing] to explain which community-caretaking functions, beyond responding to an emergency or administering emergency aid, would reasonably justify a warrantless entry into a home.” Post at 349. However, any such articulation would be dicta, because it would incorporate circumstances not controlling in the instant case.