# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

DENNIS KEITH TOWNE,

    Defendant-Appellant.

UNPUBLISHED
March 10, 2016

No. 322820
Livingston Circuit Court
LC No. 12-020831-FH

Before: SERVITTO, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Defendant, Dennis Keith Towne, pleaded guilty to manufacturing marijuana, MCL 333.7401(2)(d)(*iii*), and was sentenced to two days in jail, with credit for two days served, and one year of probation. We denied defendant's application for leave to appeal, *People v Towne*, unpublished order of the Court of Appeals, entered September 17, 2014 (Docket No. 322820), and defendant thereafter applied for leave to appeal before our Supreme Court, which remanded this matter for consideration as on leave granted, *People v Towne*, 497 Mich 1026; 863 NW2d 57 (2015). We now affirm.

## I. BACKGROUND

On December 15, 2011, Michigan State Police (MSP) Trooper Joseph Allen Pendergraff went to defendant's residence to execute an arrest warrant for defendant's son, Richard Keith Towne. While, according to defendant, Richard did not live at the residence, Pendergraff had learned a variety of information, including the fact that there was a vehicle at defendant's residence that was registered in Richard's name, the fact that Richard received mail at the residence, and other similar information, that led him to believe that Richard was, in fact, residing at defendant's residence on and before that date. Pendergraff, accompanied by MSP Trooper Adam Henderson, approached the residence's front door, knocked, was greeted by defendant, and asked to search the residence to find and arrest Richard. During Pendergraff's and Henderson's interactions with defendant, MSP Troopers Matthew Keller and Michael Sura approached the back of the residence in hopes of preventing Richard from escaping.

As defendant opened the door, he did so "just enough to slide out and then . . . closed the door immediately behind him" before greeting the troopers. This odd behavior, coupled with the information described above, led Pendergraff to believe that Richard was, indeed, in defendant's residence. Pendergraff also learned that a second vehicle at defendant's residence was also

-1-

registered in Richard's name during the conversation. Eventually, Pendergraff asked permission to enter defendant's residence, and defendant denied that request. In light of defendant's odd behavior as well as the additional information described above, Pendergraff believed that Richard was in the residence and that there was probable cause to search the residence. Pendergraff and Sura then left the residence to obtain a search warrant for Richard in defendant's residence. Keller and Henderson, however, remained near the residence to be available in the event that Richard attempted to flee.

Specifically, Henderson walked to and stood approximately "20 yards, 25 yards" from the residence, "ten twenty feet" from a pool located on defendant's property, and "[l]iterally right on the tree line" "almost in the forest" while observing defendant's residence. After remaining in this location for approximately 45 or 50 minutes, Henderson observed what he described as an "overwhelming" and "extensive amount of smoke coming out of the chimney[.]" He explained that the smoke smelled of an "extremely excess amount of freshly burned marijuana." Through the residence's many uncovered windows, he also observed the living room area of the residence "getting brighter and brighter" "from a fire." He testified that the fire "illuminated not only the whole [living] room, but the kitchen portion, the hallway, it was extremely intense." As the rooms grew brighter Henderson continued, "more smoke came out of the chimney" and "you could actually see sparks coming out of the chimney." According to Henderson, he had "never had a scent of marijuana be so overwhelmingly strong" in his 13-year career.

Fearing that individuals in the residence were attempting to destroy evidence, i.e., burning marijuana, the troopers approached the back of the residence and, through the uncovered windows, saw defendant "literally shoveling . . . handfuls of marijuana from a plastic tote . . . onto the fire." Henderson and Keller contacted Pendergraff, and all agreed that they should enter the residence to secure the evidence that was being destroyed. Henderson and Keller did so, first securing the residence to ensure that they were not ambushed by defendant, defendant's wife, or Richard, and, second, securing the unburned marijuana. In light of these developments, Pendergraff instead sought and obtained a marijuana-related search warrant. The troopers executed the same and found "a total of 75 growing marijuana plants" and numerous "bags of marijuana" that "weighed 9.04 pounds." Defendant was thereafter charged with one count of manufacturing marijuana. He moved both before the district court and circuit court to suppress the marijuana evidence and dismiss the case on Fourth Amendment grounds, but his motions were denied. Thereafter, he pleaded guilty, expressly preserving his Fourth Amendment challenge, and was sentenced as described above. This appeal followed.

On appeal, defendant argues that the circuit court erred in denying his motions to suppress and dismiss because the evidence was obtained in violation of the Fourth Amendment. We disagree.

II. APPLICABLE LAW

A. STANDARD OF REVIEW

A circuit court's factual findings at a suppression hearing are reviewed for clear error, but its application of the underlying law and ultimate decision are reviewed de novo. *People v Slaughter*, 489 Mich 302, 310; 803 NW2d 171 (2011).

## B. THE FOURTH AMENDMENT'S PROTECTIONS

"The Fourth Amendment protects people from unreasonable searches and seizures." *People v Frohriep*, 247 Mich App 692, 699; 637 NW2d 562 (2001); see US Const, Am IV; Const 1963, art 1, § 11. Therefore, "in any given Fourth Amendment case, there are two general inquiries to be made: whether a "search . . . occurred, and if so, whether that search or seizure was unreasonable." *People v Frederick*, ___ Mich App ___; ___ NW2d ___ (Docket Nos. 323642, 323643) issued December 8, 2015, slip op at 3. A search occurs if the government intrudes upon an area where a person has a "reasonable expectation of privacy." *United States v Jones*, ___ US ___; 132 S Ct 945, 950; 181 L Ed 2d 911 (2012); *People v Whalen*, 390 Mich 672, 677; 213 NW2d 116 (1973). Undisputedly, a search eventually occurred in this case. Whether it was reasonable, however, presents a different question.

"The lawfulness of a search . . . depends on its reasonableness." *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001). As a general rule, searches conducted with a warrant are reasonable, and warrantless searches are unreasonable. *Id.*; US Const, Am IV. This general rule has its exceptions, however. A warrantless search may be reasonable if law enforcement has both probable cause for the search and an exception to the warrant requirement applies. *Kirk v Louisiana*, 536 US 635, 638; 122 S Ct 2458; 153 L Ed 2d 599 (2002); *People v Brzezinski*, 243 Mich App 431, 433; 622 NW2d 528 (2000). Probable cause exists if, at the time of the search, "facts and circumstances [would] warrant a reasonably prudent person to believe that a crime has been committed and that the evidence sought will be found in [the searched] place." *Brzezinski*, 243 Mich App at 433. While there are several exceptions to the warrant requirement, the most pertinent for purposes of this appeal is the "plain view" exception.

Typically, a person has a reasonable expectation of privacy in their own home. *People v Custer (On Remand)*, 248 Mich App 552, 561-562; 640 NW2d 576 (2001). However, under the plain view exception, "[w]hat a person knowingly exposes to the public, even in his own home . . . is not a subject of Fourth Amendment protection." *Katz v United States*, 389 US 347, 351; 88 S Ct 507; 19 L Ed 2d 576 (1976). The same is true for the area surrounding a person's home. Courts distinguish between private areas surrounding the home, known as "curtilage," and public areas surrounding the home, known as "open fields." *United States v Dunn*, 480 US 294, 300; 107 S Ct 1134; 94 L Ed 2d 326 (1987). An intrusion into a person's curtilage can be a search; an intrusion into an open field, however, cannot. *Id*. In distinguishing between a person's curtilage and a person's open field, the "primary inquiry is whether 'the area harbors the intimate activity associated with the sanctity of . . . [the] home and the privacies of life.' " *People v Powell*, 477 Mich 860, 861; 721 NW2d 180 (2006), quoting *Dunn*, 480 US at 300 (alteration by *Powell* Court).

At " 'most homes, the boundaries of the curtilage will be clearly marked; and the conception defining the curtilage . . . is a familiar one easily understood from our daily experience.' " *Dunn*, 480 US at 302, quoting *Oliver v United States*, 466 US 170, 182 n 12; 104 S Ct 1735; 80 L Ed 2d 214 (1984). When it is not, courts balance four factors to differentiate between curtilage and an open field: (a) the proximity of the area at issue to the home, (b) whether the area at issue is within an enclosure surrounding the home, (c) the nature of the uses to which the area at issue is put, and (d) the steps taken by the resident to protect the area at issue

from the observation of others. *Id*. at 301-303; see also *Powell*, 477 Mich at 861; 721 NW2d at 180-181 (applying the four-factor *Dunn* test).

Law enforcement can seize items within plain view if (1) "the evidence is obviously incriminatory" and (2) "the officer is lawfully in the position" where he or she views the obviously incriminatory evidence. *People v Galloway*, 259 Mich App 634, 639; 675 NW2d 883 (2003). Despite the plain view exception's name, physical view of incriminatory evidence is not required; rather, an officer must merely be able to perceive the incriminatory evidence with one of his or her senses. We allow officers to seize items that can be plainly smelled, *People v Kazmierczak*, 461 Mich 411, 421-422; 605 NW2d 667 (2000), or plainly felt, *People v Champion*, 452 Mich 92, 105; 549 NW2d 849 (1996). But, if the officer is not lawfully present when perceiving the incriminatory evidence, the plain view exception does not apply. *Galloway*, 259 Mich App at 639. For example, in *Galloway*, the plain view exception did not apply when the police had exceeded the permissible scope of their knock and talk and entered defendant's backyard in violation of the defendant's Fourth Amendment rights. *Id*. at 640.

If evidence is seized as the result of an unconstitutional search, the evidence may be suppressed under the "exclusionary rule," a " 'judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect.' " *People v Reese*, 281 Mich App 290, 295; 761 NW2d 405 (2008), quoting *Arizona v Evans*, 514 US 1, 10; 115 S Ct 1185; 131 L Ed 2d 34 (1995). "For that reason," the exclusionary rule applies only to "those instances where its remedial objectives are thought most efficaciously served." *Id*. (citation and internal quotation marks omitted). That is, not all evidence is suppressed "simply because it would not have come to light but for the illegal actions of the police." *Id*. (citation and internal quotation marks omitted). "[W]hether the evidence must be suppressed depends on whether the evidence was discovered through exploitation of that illegality" or by "sufficiently distinguishable" means. *Id*. at 295-296 (citation and internal quotation marks omitted).

III. APPLICATION

On appeal, defendant argues that Sura's and Keller's actions, i.e., walking to the back of his residence during the knock and talk, violated his Fourth Amendment rights. Therefore, he claims, the marijuana evidence subsequently found in his residence should be suppressed and this case should be dismissed. We disagree for one fundamental reason—Sura's and Keller's actions did not lead to the recovery of any evidence. Thus, the exclusionary rule is inapplicable. *Reese*, 281 Mich App at 295-296. While it is true that, after Sura and Pendergraff left the residence, Keller eventually detected the odor of marijuana, smelling marijuana from his patrol vehicle in front of the residence 45 or 50 minutes later, that had absolutely nothing to do with his walking to the back of defendant's residence allegedly in violation of defendant's constitutional rights. Stated differently, we simply cannot conclude that, but for Sura and Keller walking to the back of defendant's residence during the knock and talk, the marijuana would not have been obtained. *Id*. at 295. Rather, the marijuana was ultimately uncovered by "sufficiently distinguishable" means and, therefore, need not be suppressed. *Id*. (citation and internal quotation marks omitted).

Defendant also argues that Henderson's actions, i.e., walking to and observing his residence from the tree line, violated his Fourth Amendment rights. Therefore, he claims again, the marijuana evidence subsequently found in his residence should be suppressed and this case should be dismissed. Again, we disagree. Defendant's argument rests solely upon his erroneous assumption that Henderson was in the private curtilage of his residence. The record reflects that he was not. As stated above, warrantless searches are reasonable if both probable cause for the search and an exception to the warrant requirement exist. *Kirk*, 536 US at 638; *Brzezinski*, 243 Mich App at 433. Here, when Henderson and Keller entered the residence, a reasonably prudent person would have believed that a crime was being committed and that the evidence sought would be found in the place searched. *Brezezkinski*, 243 Mich App at 433. Henderson observed an "overwhelming" and "extensive" amount of smoke that smelled like an "extremely excess amount of freshly burned marijuana" as well as watched defendant "shovel[]" marijuana into the fire. Thus, probable cause existed. Consequently, the issue we are faced with is whether the requisites for application of the plain view exception also existed.

Again, law enforcement may seize evidence that is in plain view if (1) "the evidence is obviously incriminatory" and (2) "the officer is lawfully in the position" where he or she views the obviously incriminatory evidence. *Galloway*, 259 Mich App at 639. At issue in this case is whether Henderson was lawfully present when he smelled the "overwhelming" and "extensive" amounts of marijuana smoke leaving the residence's chimney. The record includes quite a bit of detail about defendant's property. It reflects that his residence sits in the middle of a wooded five-acre parcel. The residence itself is not enclosed by any type of manmade boundary. Instead, natural trees, as well as a handful of planted trees, surround the residence. Thus, we find it helpful to balance the four factors set forth in *Dunn*: (1) the proximity of Henderson's location to the residence, (2) whether Henderson's location was within an enclosure surrounding the residence, (3) the nature of the uses to which Henderson's location is put, and (4) the steps taken by defendant to protect Henderson's location from observation by people passing by. 480 US at 301-303. Doing so, we conclude that Henderson did not invade the curtilage of defendant's residence.

Henderson's preliminary examination testimony reflects that he walked along the south and east sides of defendant's residence. Defendant claimed to have planted trees for privacy purposes in or near these areas. While defendant and his wife also testified that their pool, deck, fire pit, and river were located somewhat near the path that Henderson may have taken or the location that he stood in, Henderson testified that a significant distance, between ten and 20 feet, existed between him and these manmade structures. Henderson further testified that he was 20 to 25 yards from the residence itself. While this distance may not have exceeded the distances discussed in other cases, see *Oliver*, 466 US at 182; see also *Dunn*, 480 US at 301-303, there is no bright-line distance required. Henderson specifically testified that he was "right on the tree line," "almost in the forest," and next to 100-foot-tall trees. This is consistent with the circuit court's finding that the officers were "on the edge, outer edge of the property." While defendant's wife attempted to refute such a conclusion, the record is clear in that neither she nor defendant actually saw where Henderson was located. Furthermore, she essentially described Henderson as being "within feet" or near areas that she labeled as private, not actually in the private areas. *Powell*, 477 Mich at 861. Thus, her testimony also supports a conclusion that Henderson was in an open field, albeit perhaps somewhat near what may be considered curtilage. Furthermore, to the extent Henderson's testimony about his location was in conflict with

defendant's or defendant's wife's, we defer to the circuit court's credibility determination resolving those conflicts. *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000). Thus, because we conclude that Henderson did not invade the curtilage of defendant's residence, the plain view exception applies, and defendant's Fourth Amendment rights were not violated.

## IV. CONCLUSION

In sum, we conclude that the circuit court correctly denied defendant's motions to suppress and dismiss because the evidence was obtained constitutionally under the plain view exception. Consequently, we need not address whether exigent circumstances also supported the search. We therefore affirm defendant's conviction and sentence.

Affirmed.

/s/ Deborah A. Servitto
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien