*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEVON JOHN SCHNYDERS,

        Defendant-Appellant.

UNPUBLISHED
April 20, 2023

No. 357608
Allegan Circuit Court
LC No. 20-023654-FH

Before: GLEICHER, C.J., and MARKEY and RICK, JJ.

PER CURIAM.

A jury convicted Devon Schnyders of possession of methamphetamine, MCL 333.7403(2)(b)(*i*), arising from the discovery of residue in two glass pipes found in his vehicle. Schnyders challenged the validity of the inventory search of his truck and claimed that Allegan County Sheriff Sergeant Brandon Berens improperly elicited inculpatory statements from him after he requested an attorney. We affirm.

## I. BACKGROUND

On February 1, 2019, Sergeant Berens stopped a vehicle because the driver, Schnyders, was not wearing a seatbelt and the tab on the truck's license plate was expired. Schnyders presented a state-issued identification card instead of a driver's license. Sergeant Berens conducted a Law Enforcement Information Network search and discovered that Schnyders's license had been suspended and that the license plate affixed to the vehicle was not registered to the truck. And Sergeant Berens stated that Schnyders did not have no-fault insurance.

Sergeant Berens asked for permission to search the vehicle, but Schnyder refused consent. The sergeant decided to impound the vehicle because it was not properly registered or insured. Moreover, neither Schnyders nor his passenger had a valid license, precluding either from driving the vehicle away. The sergeant ordered Schnyders to exit the vehicle so he could perform an inventory search before the vehicle was towed. He inquired whether there was anything illegal inside the truck and Schnyders indicated that there was not. During his search, Sergeant Berens

-1-

found two glass smoking pipes under a blanket next to the driver's seat. The residue inside the pipes later tested positive for meth.

Sergeant Berens described that Schnyders became belligerent when the sergeant stated his intent to conduct an inventory search. Sergeant Berens handcuffed Schnyders and escorted him to his patrol vehicle. While seated in the patrol car, Schnyders answered questions posed by the sergeant. Schnyders indicated that he took the pipes from a friend who was struggling with addiction, but admitted that he had smoked meth in the previous two or three days. At the conclusion of this stop, Sergeant Berens drove Schnyders five to eight miles to his brother's house. The sergeant permitted Schnyders to remove his tools from the truck and bring them with him.

Charges were not brought against Schnyders immediately. Before trial and nearly two years after his stop, Schnyders moved to exclude the evidence seized from his truck. Schnyders contended that the inventory search was a pretext for an illegal search. Specifically, Schnyders asserted that the vehicle was safely parked and that someone could have taken control of the vehicle, and so impoundment was unnecessary. Schnyders also presented photographs taken nearly two years after the search depicting damage to the truck's interior. Within the body of the motion, Schnyders also sought to suppress the incriminating statement he made to Sergeant Berens inside the patrol car. He asserted that Sergeant Berens continued questioning him after he requested an attorney.

The trial court denied the motion to suppress the evidence from inside the truck. The court determined that the sergeant identified a proper purpose for impounding the vehicle: without a proper registration and license plate, the vehicle could not legally be driven on the road. Accordingly, it was irrelevant if there was a licensed driver that could have driven the truck from the scene. The court concluded that the sergeant had not damaged the truck during the inventory search. As the truck "ha[d] been sitting for nearly two years, there [were] all kinds of things that could have happened to" it. The court declined to consider Schnyders's motion to suppress his statement, however, as it was not properly presented.

Schnyders subsequently filed a motion to suppress his statement to Sergeant Berens and sought reconsideration of the denial of his motion to suppress the evidence from his truck. With his motion for reconsideration, Schnyders included the sheriff department's policy on impoundment and inventory searches. At the hearing on these motions, Sergeant Berens testified that he could not recall Schnyders requesting an attorney. However, had Schnyders requested an attorney, Sergeant Berens indicated that he would have noted that in the police report and would have ceased his questioning. Moreover, Sergeant Berens testified that once Schnyders was placed in the patrol vehicle, he advised Schnyders of his *Miranda* rights. He again could not recall what Schnyders's response was when asked if he waived his rights. But if Schnyders had not waived his rights, the sergeant stated that he would have stopped his questioning and indicated this in his report. Schnyders, on the other hand, insisted that he repeatedly requested an attorney, beginning when he was first removed from his truck and before the inventory search was conducted. To prove the strength of his memory, Schnyders testified that he remembered eating Cheerios for breakfast on the morning before the traffic stop.

The court acknowledged the conflicting evidence about whether Schnyders waived his rights or requested an attorney. However, the court opined "that answering questions can be

construed as an implicit waiver of" one's rights. The court took the matter under advisement and ultimately noted that this was a pure credibility contest: "[I]t's a question of weighing credibility, in this case, to decide which version is more credible because they are so diametrically opposed in this case." The court opined that both Schnyders and Sergeant Berens "seemed credible," but found it "a little unusual . . . that Mr. Schnyders could recall what he had for breakfast that morning," two years later. But had Schnyders not waived his rights and had requested an attorney, the court accepted that such details would have been included in the police report. The court also denied Schnyders's motion for reconsideration of the motion to suppress the evidence from his truck.

The matter proceeded to trial and a jury convicted Schnyders of possession of meth. Schnyders now appeals the denial of his pretrial motions.

## II. INVENTORY SEARCH

We review de novo a trial court's ruling on a motion to suppress evidence, but review the underlying factual findings for clear error. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). A factual finding is clearly erroneous if it leaves this Court with a firm and definite conviction that a mistake was made. *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014).

Both the United States and Michigan Constitutions protect individuals from unreasonable searches and seizures. US Const, Ams IV and XIV; Const 1963, art 1, § 11; *People v Slaughter*, 489 Mich 302, 310-311; 803 NW2d 171 (2011). The exclusionary rule generally bars the introduction of evidence obtained during an unconstitutional search. *People v Hawkins*, 468 Mich 488, 498-499; 668 NW2d 602 (2003). "In order to show that a search was legal, the police must show either that they had a warrant or that their conduct fell under one of the narrow, specific exceptions to the warrant requirement." *People v Eaton,* 241 Mich App 459, 461; 617 NW2d 363 (2000).

One such exception to the warrant requirement is "[t]he performance of an inventory search by the police in accordance with departmental regulations." *People v Toohey*, 438 Mich 265, 271; 475 NW2d 16 (1991). This is because an inventory search is "an administrative function performed by the police, rather than part of a criminal investigation which the Fourth Amendment was intended to circumscribe." *Id*. at 272. For impounded vehicles, "An inventory search that is conducted pursuant to standardized police procedure is considered reasonable because the resulting intrusion will be limited to the extent it is necessary to fulfill the caretaking function." *Id*. at 275-276. The purpose of the inventory search is to secure and list the property within an impounded vehicle to protect both the owner and law enforcement officer. *Id*. at 275.

The United States Supreme Court described in *Florida v Wells*, 495 US 1, 4; 110 S Ct 1632; 109 L Ed 2d 1 (1990):

> [A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into a

purposeful and general means of discovering evidence of crime[.] [Quotation marks and citation omitted.]

The Allegan County Sheriff's Office "vehicle impound, abandoned vehicle and inventory" policy provides that "[v]ehicles may be impounded" under a list of circumstances. Relevant to this matter, a vehicle may be impounded when it "is found to be without a registration, improperly registered or titled, or operated without insurance[.]" When an officer impounds a vehicle, he or she must "make a reasonable attempt to provide for the security of the vehicle and its contents by: 1) turning custody of the vehicle over to a responsible person of the owner and/or operator's choosing or; 2) placing the vehicle and its contents in impound with an approved towing service."

The truck driven by Schnyders was not properly registered and bore a license plate that belonged to a different vehicle. Moreover, Schnyders did not have no-fault insurance coverage. Sergeant Berens had a right under the department policy to impound the vehicle. Sergeant Berens then had two options: turn custody of the vehicle over to a properly licensed individual or have the vehicle towed. Neither Schnyders nor his passenger had a valid driver's license. Although Schnyders contended in his motion that his brother could have taken the vehicle, Sergeant Berens testified that Schnyders could identify no one available to take custody of the vehicle at the time.[1] The trial court observed the witnesses first hand and credited the sergeant's account over Schnyders's. We must defer to the trial court's "superior opportunity to evaluate these matters" of credibility. *People v Sexton*, 461 Mich 746, 752; 609 NW2d 822 (2000). In any event, as the vehicle did not have mandatory insurance, or a proper registration or license plate, the vehicle could not be operated legally on a public road.

Schnyders challenges the validity of the inventory search because Sergeant Berens did not create a comprehensive list of every item inside the truck. An inventory search may be procedurally defective when it is not shown "that standard inventory forms were completed and kept for future reference (showing presence or absence of valuables), [or] that a place of safekeeping for valuables so secured was maintained." *People v Long (On Remand)*, 419 Mich 636, 647-648; 359 NW2d 194 (1984) (quotation marks and citations deleted). The police report indicated that Sergeant Berens found two glass pipes under a blanket and a cooler with two cans of beer inside the truck. Schnyders indicated that he also had clothing and tools in the vehicle. Sergeant Berens permitted Schnyders to remove the tools from the truck before it was impounded. Accordingly, those items would not be included on any inventory. The omission of mention of Schnyders's articles of clothing from the police report's recitation of the inventory had no real impact on this case.

Schnyders also asserts that the photographic evidence supports that Sergeant Schnyders "ransacked" his truck and pulled the speakers from the dashboard looking for evidence. The trial court correctly determined, however, that the photographs taken nearly two years after the search

---

[1] Even though his brother lived only five to eight miles away from the site of the stop and the sergeant drove Schnyders there after impounding the truck, Schnyders presented no evidence that his brother had a valid driver's license.

and Schnyders could not establish that the damage depicted was caused by the sheriff's department or within the impoundment lot.

## III.  RIGHT TO REMAIN SILENT

Schnyders also challenges the admission of his statement in the patrol car.  Generally, before engaging in custodial interrogation, police must inform a suspect of his or her rights to remain silent and to have an attorney present for questioning.  *Miranda v Arizona*, 384 US 436, 469-473; 86 S Ct 1602; 16 L Ed 2d 694 (1966).  Once the right to counsel is invoked, all interrogation must cease until counsel is made available, or unless the accused initiates further communication, exchanges, or conversations with the police.  *Edwards v Arizona*, 451 US 477, 484-485; 101 S Ct 1880; 68 L Ed 2d 378 (1981).  "The right to have counsel present during custodial interrogation is a corollary of the right against compelled self-incrimination," because the availability of counsel at a custodial interrogation helps to ensure that statements offered are not coerced.  *People v Elliott*, 494 Mich 292, 301; 833 NW2d 284 (2013), citing *Miranda*, 384 US at 466.

As aptly noted by the trial court, whether Schnyders invoked his right to counsel was a pure credibility contest.  Although Sergeant Berens could not specifically recall the details of the evening in question, he testified that had Schnyders requested an attorney, he would have ceased all questioning and stated in his report that Schnyders had invoked his right.  Schnyders's attempts to make his memory look more reliable were purely self-serving.  Again, it is not the role of this Court to interfere with the lower court's assessment of the testifying witnesses' credibility.

The trial court's conclusion that Schnyders implicitly waived his rights is more complicated.  However, we need not dwell on that issue.  Even if Schnyders's statement was improperly admitted, any error was harmless.  "A constitutional error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."  *People v Henry (On Remand)*, 305 Mich App 127, 144; 854 NW2d 114 (2014) (cleaned up).  Sergeant Berens found the meth pipes in the truck during a valid inventory search.  Those pipes were within easy reach of the driver's seat, hidden only under a blanket.  This evidence was more than adequate to establish Schnyders's possession of the contraband.  See *People v Cohen*, 294 Mich App 70, 77; 816 NW2d 474 (2011) (holding that at a minimum, joint constructive possession can be established by the discovery of drug paraphernalia in plain view on a vehicle's center console).

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Michelle M. Rick