# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LAMEKE LATRICE BAILEY,

Defendant-Appellant.

UNPUBLISHED
March 28, 2017

No. 330748
Muskegon Circuit Court
LC No. 15-066333-FH

Before: STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant, Lameke Latrice Bailey, was convicted by a jury of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1); and felonious assault, MCL 750.82. Defendant was sentenced as a second-offense habitual offender, MCL 769.10, to 8 months in jail for her assaulting, resisting, or obstructing a police officer conviction and 8 months in jail for her felonious assault conviction, with credit for 32 days served. Additionally, defendant was sentenced to 16 months' probation on both convictions. Defendant now appeals as of right. We affirm.

## I. BACKGROUND

This case arises out of an alleged domestic disturbance requiring the police to respond to a residence. Officer Gerald Anderson testified that on May 13, 2015, he was dispatched to a residence at 2920 Reynolds at approximately 11:50 p.m. based on information that there was a disturbance at the residence and that a person had been assaulted. He was informed that the victim of the assault was being treated for an eye injury at the emergency room and that there was an ongoing disturbance at the residence involving the 9-1-1 caller's sister trying to get into the residence. Officer Anderson knew that the residence belonged to Turquoise Bailey, defendant's sister, because he had previously responded to disturbances at that residence.

When Officer Anderson arrived at the residence, along with Officer Chris Stoddard, the front door was open. Officer Anderson could see into the home, although he could not see any activity. As he was standing at the door, he heard noises that sounded like a "disturbance" was occurring inside, including banging, thumping, and loud voices. The sound was very loud, "like a scruffle." He could not tell what was being said, but the women "sounded like they were in distress," although nobody was yelling for help at that point. Officer Chris Stoddard testified that the disturbance sounded like fighting and yelling. Officer Anderson knocked several times,

-1-

announced his presence as a police officer, and the two officers entered the residence after receiving no answer. They did not have a search warrant. Based on the banging and the disturbance that Officer Anderson heard inside the home, he believed that there was an emergency situation that permitted entry to the residence without a search warrant. Officer Stoddard testified that he also believed that there was an emergency or violent act occurring, based on the dispatch information that there was a domestic situation, along with hearing what sounded like fighting when they arrived at the residence.

Inside, the officers saw two women on top of defendant, pinning her to the floor. The two women that held defendant down were later identified as Jolene Bailey, defendant's mother, and Turquoise. Officer Anderson told Jolene and Turquoise to let defendant get up, and they complied. Both officers were wearing their police uniforms. When defendant stood up, she said that she was not going to jail and that she was "not going down without a fight." Defendant then grabbed a glass or ceramic lamp that was approximately 2½ feet long, flipped it upside down, and swung it at the officers like a baseball bat. Officer Anderson testified that he ordered defendant to drop the lamp multiple times—"at least five" times—because he was concerned for the safety of the others in the residence, and defendant did not drop the lamp. After defendant barricaded herself in the bedroom, Officer Stoddard kicked the door open, and Officer Anderson went inside. Defendant swung the lamp at Officer Anderson, he blocked it with his hand, and the lamp hit his arm. Officer Anderson and Officer Stoddard wrestled defendant to the ground and continued to struggle with her. She kept her hands underneath her body and refused to allow the officers to put her hands into handcuffs, continuing to resist despite the officers' commands to stop resisting. Eventually, the officers were able to forcibly place defendant's hands into handcuffs, and they took her into custody.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first challenges the sufficiency of the evidence supporting her convictions, arguing that the police officers' warrantless entry into the residence violated the Fourth Amendment to the United States Constitution, as well as the analogous provision of the Michigan Constitution, and that defendant was therefore legally permitted to resist the officers' entry into the residence. We disagree.

This Court "review[s] de novo a challenge to the sufficiency of the evidence." *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014). "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Meshell*, 265 Mich App 616, 621; 696 NW2d 754 (2005) (quotation marks and citations omitted; alteration in the original). "All conflicts in the evidence must be resolved in favor of the prosecution," and this Court "will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the

evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

We review de novo the application of the legal principles contained in the Fourth Amendment of the United States Constitution and Article 1, § 11 of the Michigan Constitution. *People v Slaughter*, 489 Mich 302, 310; 803 NW2d 171 (2011). However, unpreserved issues, whether non-constitutional or constitutional, are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). On plain-error review, the defendant has the burden to show (1) "error"; (2) that was "plain," meaning "clear or obvious"; (3) and that affected substantial rights or caused prejudice, meaning "that the error affected the outcome of the lower court proceedings." *Id*. at 763.

A person has a right that is guaranteed by both the federal and Michigan constitutions to be free from unreasonable searches and seizures. *Herring v United States*, 555 US 135, 139; 129 S Ct 695; 172 L Ed 2d 496 (2009); *Slaughter*, 489 Mich at 310-311; US Const, Am IV; Const 1963, art 1, § 11. "[T]he Michigan Constitution is to be construed to provide the same protection as that secured by the Fourth Amendment, absent compelling reason to impose a different interpretation." *Slaughter*, 489 Mich at 311 (quotation marks and citation omitted).

"[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v United States*, 533 US 27, 33; 121 S Ct 2038; 150 L Ed 2d 94 (2001). Furthermore, the United States Supreme Court has stated, "the Fourth Amendment draws a firm line at the entrance to the house." *Id*. at 40 quoting *Payton v New York*, 445 US 573, 590; 100 S Ct 1371; 63 L Ed 2d 639 (1980). Whether a search or seizure was lawful is determined by evaluating its reasonableness. *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001). "Searches and seizures conducted without a warrant are unreasonable per se, subject to several specifically established and well-delineated exceptions." *People v Borchard-Ruhland*, 460 Mich 278, 293-294; 597 NW2d 1 (1999).

One recognized exception to the warrant requirement is the emergency-aid exception.[1] *People v Davis*, 442 Mich 1, 11; 497 NW2d 910 (1993); see also *Brigham City, Utah v Stuart*, 547 US 398, 403; 126 S Ct 1943; 164 L Ed 2d 650 (2006). "[T]he emergency-aid exception to the warrant requirement allows police officers to enter a dwelling without a warrant under circumstances in which they reasonably believe, based on specific, articulable facts, that some person within is in need of immediate aid." *People v Lemons*, 299 Mich App 541, 545-546; 830 NW2d 794, 797 (2013) (quotation marks and citation omitted). "[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City*, 547 US at 403. "An action is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as

---

[1] While the "community caretaking" exception is similar and has also been recognized by the Michigan Supreme Court, see *People v Davis*, 442 Mich 1, 11; 497 NW2d 910 (1993), our Supreme Court has held that "when the police are investigating a situation in which they reasonably believe someone is in need of immediate aid, their actions should be governed by the emergency aid doctrine, regardless of whether these actions can also be classified as community caretaking activities." *Id*. at 25.

long as the circumstances, viewed *objectively*, justify [the] action," and "[t]he officer's subjective motivation is irrelevant." *Id*. at 404 (quotation marks and citation omitted; first alteration in the original). Under the emergency-aid exception, "the entry must be limited to the justification therefor, and the officer may not do more than is reasonably necessary to determine whether a person is in need of assistance, and to provide that assistance." *Davis*, 442 Mich at 26. The emergency-aid exception does not require a warrant or probable cause. *People v Brzezinski*, 243 Mich App 431, 434; 622 NW2d 528 (2000).

Additionally, there is no rule that confers "automatic standing" to challenge the constitutionality of a search. *People v Smith*, 420 Mich 1, 20; 360 NW2d 841 (1984). "For an individual to assert standing to challenge a search, the individual must have had a legitimate expectation of privacy in the place or location searched, which expectation society recognizes as reasonable." *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008). "[T]his right is personal and may not be invoked by third parties." *Id*. "The defendant has the burden of establishing standing, and in deciding the issue, the court should consider the totality of the circumstances." *People v Powell*, 235 Mich App 557, 561; 599 NW2d 499 (1999) (citation omitted). "Factors relevant to the determination of standing include ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case." *Brown*, 279 Mich App at 130 (quotation marks and citation omitted). The United States Supreme Court has held that a defendant's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." *Minnesota v Olson*, 495 US 91, 93-94, 96-97; 110 S Ct 1684; 109 L Ed 2d 85 (1990) (where the police had information that defendant was staying in a residence other than his own, and the police entered that other residence without a warrant and apprehended the defendant). Therefore, an overnight guest "can claim the protection of the Fourth Amendment." *Id*. at 100.

Here, as an initial matter, defendant has not demonstrated that she has standing to challenge the police officers' warrantless entry of the residence at 2920 Reynolds. Officer Gerald Anderson testified that the residence belonged to Turquoise Bailey, defendant's sister. There is no evidence that the residence belonged to defendant or that defendant was living or staying at the residence at the time of the incident. At defendant's arraignment, the trial court asked defendant, "Now before you go are you still at 2920 Reynolds?" Defendant responded, "No I'm not there but the mail can come there." The fact that defendant may have been able to receive mail at the residence belonging to Turquoise, or may have stayed there at some point, does not establish that defendant had, at the time of incident in question, any degree of ownership, possession, or control over the residence; the scant evidence on this point actually suggests that defendant was not staying there, and thus, under the totality of the circumstances, she could not have held any subjective expectation of privacy in the residence that was objectively reasonable. See *Brown*, 279 Mich App at 130. There is no evidence that defendant was an overnight guest at Turquoise's residence that would allow her to potentially claim the protection of the Fourth Amendment. See *Olson*, 495 US 91, 93-94, 96-97, 99. Thus, defendant has not met her burden of establishing that she has standing to make this Fourth Amendment challenge. See *Powell*, 235 Mich App at 561; see also *People v Parker*, 230 Mich App 337, 339, 340-341; 584 NW2d 336 (1998).

-4-

Moreover, even if defendant had standing to make this challenge, the police entry in this case did not violate her constitutional protections against unreasonable searches and seizures because the entry was permissible under the emergency-aid exception to the warrant requirement. There was no dispute that the officers did not have a search warrant to enter the residence. However, considering the specific facts articulated by Officer Anderson and Officer Stoddard, it was reasonable for the officers to believe that somebody inside was in need of immediate aid, emergency assistance, or protection from imminent injury. See *Lemons*, 299 Mich App at 545-546; *Brigham City*, 547 US at 403. The officers' actions in this case were justified because, viewing the circumstances objectively, it was reasonable for the officers to conclude that somebody inside had been or could be injured, based on the yelling and fighting sounds that they heard, along with the dispatch information that an assault had already occurred at the residence requiring the victim to be treated at the emergency room. See *Brigham City*, 547 US at 404. Officer Anderson then ordered Jolene and Turquoise to get off of defendant in an effort to end the fight that was occurring, which did not exceed the scope of the officers' reason for entering. *Davis*, 442 Mich at 26. The officers only took action to attempt to arrest defendant in response to defendant's initiation of violence when she threatened to fight the officers with a lamp. Therefore, the officers' entry into the residence was reasonable pursuant to the emergency-aid exception to the warrant requirement, and defendant has failed to establish plain error. *Carines*, 460 Mich at 763.

Having established that the police officers' warrantless entry of the residence was not unlawful, the next step of analysis is to address whether there was sufficient evidence to support defendant's convictions.

The crime of assaulting, resisting, or obstructing a police officer, is defined in MCL 750.81d(1), which provides in relevant part that

> an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

" 'Obstruct' includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a). " 'Person' means . . . [a] police officer of this state or of a political subdivision of this state . . . ." MCL 750.81d(7)(b)(*i*).

There are three elements that the prosecution must establish in order to convict a defendant of violating MCL 750.81d(1): (1) "the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer," (2) "the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties," and (3) "the officers acted lawfully." *People v Quinn*, 305 Mich App 484, 491, 492; 853 NW2d 383 (2014) (quotation marks and citation omitted).

Defendant does not challenge the first two elements, but only argues that the police officers were acting unlawfully by entering the residence without a warrant, giving defendant the right to resist the officers' entry and any related search. The Michigan Supreme Court has held

that "the right to resist *unlawful* arrests, and other *unlawful* invasions of private rights, is well established in our state's common law," and that this right was not abrogated by the Legislature's enactment of MCL 750.81d. *People v Moreno*, 491 Mich 38, 40, 42-43, 46-47, 58; 814 NW2d 624 (2012). In *Moreno*, our Supreme Court remanded the defendant's case to the trial court with instructions to grant the defendant's motion to quash the charge of resisting and obstructing a police officer under MCL 750.81d where the defendant affirmatively refused to allow police to enter his home without first obtaining a warrant, a physical struggle then occurred between the defendant and the police officers before the defendant was physically subdued and arrested, and the trial court found that there were no exigent circumstances that would have served as an exception to the warrant requirement. *Id*. at 43-44, 58.

Unlike the situation in *Moreno*, there was no unconstitutional entry or unlawful police conduct for defendant in the instant case to resist. As previously discussed, defendant's constitutional right to be free from unreasonable searches and seizures was not violated based on the police officers' entry into the residence. Defendant did not have a reasonable expectation of privacy in the residence, and even if she did, the officers' entry was justified under the emergency-aid exception to the warrant requirement. Viewing the evidence in a light most favorable to the prosecution, a rational jury could find beyond a reasonable doubt that the police officers acted lawfully and that the prosecution established all of the necessary elements to convict defendant of assaulting, resisting, or obstructing a police officer. *Wolfe*, 440 Mich at 515; *Quinn*, 305 Mich App at 491.

Next, the crime of felonious assault is defined in MCL 750.82, which provides in relevant part:

> [A] person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both.

"The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). "[A] simple criminal assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery . . . ." *People v Johnson*, 407 Mich 196, 210; 284 NW2d 718 (1979) (quotation marks and citation omitted). "Battery has been defined as an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005) (quotation marks and citation omitted). The term "other dangerous weapon" serves to include an object that might not traditionally be considered a weapon if that object is used as a dangerous weapon in the assault, as the Michigan Supreme Court has explained with respect to the felonious assault statute:

> Some weapons carry their dangerous character because so designed and are, when employed, per se, deadly, while other instrumentalities are not dangerous

weapons unless turned to such purpose. The test as to the latter is whether the instrumentality was used as a weapon and, when so employed in an assault, dangerous. The character of a dangerous weapon attaches by adoption when the instrumentality is applied to use against another in furtherance of an assault. When the purpose is evidenced by act, and the instrumentality is adapted to accomplishment of the assault and capable of inflicting serious injury, then it is, when so employed, a dangerous weapon. [*People v Goolsby*, 284 Mich 375, 378; 279 NW 867 (1938).]

Finally, "because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Here, defendant does not make any specific arguments with respect to her felonious assault conviction, but we find that the evidence was nonetheless sufficient to support it. The jury could have reasonably found that defendant attempted to commit a battery against Officer Anderson by swinging the lamp at him and actually committed a battery when she hit him with the lamp, satisfying the first element of felonious assault. See *Johnson*, 407 Mich at 210; *Starks*, 473 Mich at 234; *Avant*, 235 Mich App at 505. The jury could have also reasonably found that the lamp was a dangerous weapon because defendant used it as a means to accomplish the assault and attempt to inflict injury on Officer Anderson, and the heavy glass or ceramic lamp was "capable of inflicting serious injury" when swung at a person like a baseball bat. See *Goolsby*, 284 Mich at 377; *Avant*, 235 Mich App at 505. Finally, the jury could have reasonably inferred from defendant's statements indicating that she wanted to fight with the police officers, along with the way that she used the lamp against Officer Anderson, that she intended to injure Officer Anderson or place him in reasonable fear of an immediate battery. *Kanaan*, 278 Mich App at 622; *Avant*, 235 Mich App at 505. Thus, viewing the evidence in a light most favorable to the prosecution, a rational jury could have found defendant guilty beyond a reasonable doubt of felonious assault. See *Wolfe*, 440 Mich at 515.

## III. DEFENDANT'S RIGHT TO PRESENT A DEFENSE

Next, defendant argues that she was denied her right to present a defense because Jolene was not permitted to testify as a res gestae witness. We disagree.

"[W]hether a defendant's right to present a defense was violated by the exclusion of evidence is a constitutional question that this Court reviews de novo." *People v Steanhouse*, 313 Mich App 1, 17; 880 NW2d 297 (2015) (citation omitted). Unpreserved constitutional claims are reviewed on appeal for plain error affecting substantial rights. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). A trial court's decision to permit witnesses to be added to or deleted from the witness list is ordinarily reviewed for an abuse of discretion. *People v Burwick*, 450 Mich 281, 291; 537 NW2d 813 (1995). Unpreserved issues involving the failure to produce a res gestae witness are reviewed for plain error affecting substantial rights. *Steanhouse*, 313 Mich App at 14. However, when a defendant waives, rather than forfeits, his rights, "there is no 'error' to review." *People v Carter*, 462 Mich 206, 219; 612 NW2d 144 (2000).

"A criminal defendant has a right to present a defense under our state and federal constitutions." *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006). However, "this right is not unlimited and is subject to reasonable restrictions." *King*, 297 Mich App at 473. "The accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Steanhouse*, 313 Mich App at 20 (quotation marks and citation omitted).

A res gestae witness is a person who "witnesse[d] some event in the continuum of the criminal transaction" and who could provide testimony that would "aid[] in developing a full disclosure of the facts at trial." *People v Long*, 246 Mich App 582, 585; 633 NW2d 843 (2001). The prosecution's obligations with respect to res gestae witnesses are governed by MCL 767.40a, which provides:

> (1) The prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers.

> (2) The prosecuting attorney shall be under a continuing duty to disclose the names of any further res gestae witnesses as they become known.

> (3) Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial.

> (4) The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties.

> (5) The prosecuting attorney or investigative law enforcement agency shall provide to the defendant, or defense counsel, upon request, reasonable assistance, including investigative assistance, as may be necessary to locate and serve process upon a witness. The request for assistance shall be made in writing by defendant or defense counsel not less than 10 days before the trial of the case or at such other time as the court directs. If the prosecuting attorney objects to a request by the defendant on the grounds that it is unreasonable, the prosecuting attorney shall file a pretrial motion before the court to hold a hearing to determine the reasonableness of the request.

> (6) Any party may within the discretion of the court impeach or cross-examine any witnesses as though the witness had been called by another party.

The pre-1986 version of the statute "plainly imposed on a prosecutor the duty to list all res gestae witnesses on the information and to produce them at trial." *People v Perez*, 469 Mich 415, 418; 670 NW2d 655 (2003). However, when the statute was amended in 1986, "the Legislature replaced the prosecutor's duty to produce res gestae witnesses with an obligation to provide notice of known witnesses and reasonable assistance to locate witnesses on defendant's

request." *Id*. at 418-419 (quotation marks and citation omitted). Thus, under the current version of the statute "the prosecutor will give advance notice of all *known* res gestae witnesses and specify before trial which *known* witnesses it intends to call," and, having been advised of that information, "the defense determines which known witnesses the prosecutor will not call." *Burwick*, 450 Mich at 290-291. "[U]pon request, the government must provide reasonable assistance 'as may be necessary to locate and serve process . . . .' " *Id*. at 291, quoting MCL 767.40a(5) (last alteration in the original). "Having thus fully addressed all known witnesses and provided for notice of their existence and a designation of who will be produced, the statute contemplates that the defense will seek production of the witnesses it desires and allows the prosecutor to delete from or add to the list of witnesses it will produce 'at any time' as long as the good-cause requirement of MCL 767.40a(1) is satisfied." *Id*. "Endorsement or deletion from this list is within the discretion of the trial court, reversible only for abuse." *Id*. Furthermore, MCR 6.416 provides that "[s]ubject to the rules in this chapter and to the Michigan rules of evidence, each party has discretion in deciding what witnesses and evidence to present." See also *Burwick*, 450 Mich at 291 n 13 ("The commentary [to MCR 6.416] explicitly recognizes that each party has discretion in deciding what witnesses and evidence to present.").

In the instant case, there does not appear to be any dispute that Jolene was a res gestae witness. *Long*, 246 Mich App at 585. It also appears that the prosecution complied with its statutory obligations of providing notice that Jolene was a res gestae witness. See MCL 767.40a(1); *Burwick*, 450 Mich at 290-291. Moreover, defendant was clearly aware of Jolene's existence because Jolene was defendant's mother, defense counsel indicated that she made multiple attempts to contact Jolene based on defendant's request that she testify at trial, and defendant apparently was able to procure Jolene's presence at trial by contacting her during a break in the trial. The prosecution was not required to call Jolene as a witness at trial. *Perez*, 469 Mich at 418-419. Indeed, defendant does not argue on appeal that the prosecution failed to comply with its obligations regarding res gestae witnesses, and defendant does not otherwise allege any wrongdoing by the prosecution.

Rather, defense counsel expressly declined to call Jolene as a witness, waiving this right. "Waiver has been defined as the intentional relinquishment or abandonment of a known right." *Carter*, 462 Mich at 215 (quotation marks and citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. at 215, 219 (quotation marks and citation omitted) (holding that an effective waiver occurred when "counsel clearly expressed satisfaction with the trial court's decision"). "[W]hile the defendant must personally make an informed waiver for certain fundamental rights such as the right to counsel or the right to plead not guilty, for other rights, waiver may be effected by action of counsel." *People v Buie*, 491 Mich 294, 305; 817 NW2d 33 (2012) (quotation marks and citation omitted). Specifically, waiver may be accomplished through defense counsel when the matter at issue is one of trial strategy. *Carter*, 462 Mich at 218-219 ("Because counsel has full authority to manage the conduct of the trial and to decide matters of trial strategy, we conclude that in this instance, waiver could be effected by the action of defense counsel."). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

Here, defense counsel indicated that she did not wish to call Jolene as a witness because she had not been able to interview Jolene before trial. Defense counsel indicated to the trial court that it was not her practice to call witnesses at trial without first finding out what they would say. Defense counsel reported that she had attempted to contact Jolene in July—months before defendant's October trial—and that Jolene had not responded. Defense counsel attempted to contact Jolene by mail and by telephone, and despite defendant's awareness that Jolene had not replied and that the telephone number that defense counsel had for Jolene was invalid, defendant did not provide defense counsel with any further information. Defense counsel's decision not to call Jolene to testify clearly represents a strategic judgment about whether specific witnesses will be presented. See *Rockey*, 237 Mich App at 76. Defense counsel's unequivocal indication that she did not wish to call Jolene was an intentional relinquishment of any right to call Jolene as a res gestae witness, and thus functioned as a waiver of that right. See *Carter*, 462 Mich at 215. As a matter of trial strategy, this waiver could be made through defense counsel. See *id*. at 218-219; cf. also *Buie*, 491 Mich at 315, 318, quoting *Carter*, 462 Mich at 215 (holding that "if the decision constitutes reasonable trial strategy, which is presumed, the right of confrontation may be waived by defense counsel as long as the defendant does not object on the record" and that the defendant, "through his counsel, waived his right of confrontation and 'extinguished any error' that may have been committed").

Because the trial court complied with defense counsel's request and thus did not prevent defendant from calling a witness, defendant cannot now claim that the trial court erred in this respect and denied her right to present a defense; defendant's waiver "extinguished any error." *Carter*, 462 Mich at 215. Defendant's argument is really more of a claim that defense counsel's decision constituted ineffective assistance, and that argument is addressed below.

## IV. DEFENDANT'S RIGHT TO TESTIFY

Next, defendant argues that she was prevented from testifying on her own behalf at trial because there was no record to show that defendant was advised by defense counsel about this right, and no record was made to show that defendant actually made the decision not to testify. We disagree.

"This Court reviews de novo whether defendant suffered a deprivation of his constitutional right to present a defense," *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009), and "reviews unpreserved claims of constitutional error under the plain-error standard," *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011).

"A defendant's right to testify in his own defense arises from the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution." *Id*. "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *Id*. at 419, 421 (holding that there was no error requiring reversal where the defendant "expressly acknowledged on the record that he understood it was his choice whether to testify and that he understood that anything he testified to could be used against him"). "[T]here is no requirement in Michigan that there be an on-the-record waiver of a defendant's right to testify." *People v Harris*, 190 Mich App 652, 661; 476 NW2d 767 (1991); see also *People v Simmons*, 140 Mich App 681, 684; 364 NW2d 783 (1985) ("We agree with the majority of courts which have addressed this issue and decline to require an on-the-record waiver of

defendant's right to testify."). "If the accused expresses a wish to testify at trial, the trial court must grant the request, even over counsel's objection." *Simmons*, 140 Mich App at 685. However, if a defendant "decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *Id.* (quotation marks and citation omitted).

In the instant case, defendant's contention that no record was made to show that defendant was advised by defense counsel about her right to testify or that defendant actually made the decision not to testify, is inaccurate. Defendant did in fact make such a waiver on the record. However, because there is no requirement that a waiver of a defendant's right to testify be placed on the record, defendant's argument is without merit nonetheless. *Harris*, 190 Mich App at 661-662; *Simmons*, 140 Mich App at 685. Moreover, defendant indicated on the record that she discussed her case with defense counsel, including whether she should testify, and that she had made the decision not to testify based on defense counsel's advice. Defendant never indicated a desire to testify at trial, and she does not claim on appeal that she wanted to testify. Defendant's statements on the record demonstrate her affirmative indication that she made the decision not to testify. See *Bonilla-Machado*, 489 Mich at 421. Thus, defendant was not improperly denied her right to testify at trial. *Simmons*, 140 Mich App at 685. Defendant has therefore failed to establish plain error. See *Carines*, 460 Mich at 763.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Last, defendant argues that she received ineffective assistance of counsel on two grounds. We disagree with both.

"Unpreserved issues concerning ineffective assistance of counsel are reviewed for errors apparent on the record." *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). "A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Factual findings are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id.*

There are "two components" to establishing an ineffective-assistance-of-counsel claim requiring reversal: the defendant must show first, "that counsel's performance was deficient," and second, that "the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In other words, the defendant must establish (1) "that counsel's performance was below an objective standard of reasonableness under prevailing professional norms," and (2) "that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Stanaway*, 446 Mich 643, 687-688; 521 NW2d 557 (1994). "Effective assistance of counsel is presumed," and "[t]he defendant bears a heavy burden of proving otherwise." *Rockey*, 237 Mich App at 76. "The defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *Stanaway*, 446 Mich at 687. "This Court will not second-guess counsel on matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015) (quotation marks and citation omitted). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 US at 700.

Here, defendant first argues that defense counsel was ineffective for failing to call Jolene as a res gestae witness. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *Rockey*, 237 Mich App at 76. "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "A substantial defense is one that could have affected the outcome of the trial." *Putman*, 309 Mich App at 248.

As stated earlier, defense counsel made multiple attempts to contact Jolene by letter and by phone up until the day before trial, and received no response. Defendant was aware of her counsel's inability to make contact, and despite Jolene being defendant's mother, defendant did not provide defense counsel with any further contact information for Jolene. Yet, defendant had the ability to contact and procure Jolene's presence at the trial by making a telephone call during a break. Defense counsel indicated that she does not call witnesses to testify who have not been interviewed by her before trial because she does not otherwise know what the witnesses will say or whether their information is relevant.

Defense counsel employed a sound strategic practice because to do otherwise would invite the possibility of unexpectedly presenting damaging information to the jury. See *People v Gioglio (On Remand)*, 296 Mich App 12, 22-23; 815 NW2d 589 (2012), vacated in part on other grounds and lv den sub nom *People v Gioglio*, 493 Mich 864 (2012) (When considering an ineffective assistance of counsel claim, "a reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission."). It appears that defense counsel took reasonable steps to investigate whether Jolene should be called as a witness, and defendant could have facilitated their meeting, but chose otherwise. Defendant clearly was able to contact Jolene at will. Furthermore and contrary to defendant's argument, it appears that defense counsel's statement that "[a]ccording to the police report, no one else was present in the home" was made in reference to the "other" unnamed surprise witnesses that defendant wished to call to testify, rather than in reference to Jolene. The testimony at trial indicated that defendant, Turquoise, Jolene, Officer Anderson, and Officer Stoddard were the only people at the scene. In other words, defense counsel's decision does not appear to have been made based on inaccurate facts. Defendant has therefore failed to show that defense counsel performed below an objective standard of reasonableness. *Stanaway*, 446 Mich at 687.

Furthermore, defendant has not attempted to explain what testimony Jolene would have provided or how it would have helped her defense. Thus, defendant has not established that she was deprived of a substantial defense and therefore, that defense counsel was ineffective. *Dixon*, 263 Mich App at 398. Defendant has also failed to show a reasonable probability that but for the failure to call Jolene as a witness, the outcome of the trial would have been different, *Stanaway*, 446 Mich at 687-688.

Consequently, defendant has not established that she was denied the effective assistance of counsel on this ground. *Strickland*, 466 US at 700; see also *Avant*, 235 Mich App at 508 (holding that defendant failed to show that he received ineffective assistance of counsel based on

the failure to call a specific witness at trial where the record was "silent" regarding what testimony the witness would have given).

Defendant also argues that defense counsel was ineffective for preventing her from testifying in her own defense. "[A]n accused's decision to testify or not to testify is a strategic decision best left to an accused and his counsel." *People v Martin*, 150 Mich App 630, 640; 389 NW2d 713 (1986). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Rockey*, 237 Mich App at 76-77.

As discussed earlier, contrary to defendant's argument, defendant affirmatively indicated on the record that she had made the decision not to testify. Defendant's decision was placed on the record, even though there is no requirement in Michigan that a waiver of the right to testify be placed on the record. *Harris*, 190 Mich App at 661. Defendant's decision was a strategic one for her to make with the advice of defense counsel. *Martin*, 150 Mich App at 640. This decision will not be second-guessed on appeal. *Putman*, 309 Mich App at 248; *Rockey*, 237 Mich App at 76-77. Defendant does not claim that defense counsel failed to advise her about her right to testify or her ultimate decision with respect to this right. Rather, defendant indicated on the record at trial that such a conversion actually occurred. Defendant has not put forth any evidence to suggest that it was not sound trial strategy for her to refrain from testifying at trial, and defendant has failed to show that defense counsel performed below an objective standard of reasonableness in this respect. *Stanaway*, 446 Mich at 687. Defendant does not claim that she wanted to testify at trial, and she also has not given any indication of what her testimony would have been or how her testimony would have impacted the outcome of the trial. Thus, she has not established that she was deprived of a substantial defense or that defense counsel was ineffective. *Dixon*, 263 Mich App at 398. Similarly, defendant has not demonstrated a reasonable probability that the result of the trial would have been different but for the lack of her testimony. *Stanaway*, 446 Mich at 687-688.

Consequently, defendant has failed to show that she was denied the effective assistance of counsel on this ground. See *Simmons*, 140 Mich App at 682, 685-686 (holding that defense counsel was not ineffective for allegedly failing to inform the defendant of his right to testify where the defendant did not testify at trial, did not allege that he did not know that he had a right to testify, did not allege that he would have testified at trial, and did not indicate what his testimony would have been had he testified).

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola