*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CORNELL MAINE HEAD, JR.,

Defendant-Appellant.

UNPUBLISHED
May 7, 2020

No. 346431
Kalamazoo Circuit Court
LC No. 2017-001572-FC

Before: MARKEY, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of second-degree murder, MCL 750.317; being a felon in possession of a firearm (felon-in-possession), MCL 750.224f; two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and carrying a concealed weapon (CCW), MCL 750.227. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 30 to 50 years for the second-degree murder conviction and three to five years each for the felon-in-possession and CCW convictions, those sentences to be served subsequently to the concurrent two-year prison terms for the felony-firearm convictions, with credit for 392 days served. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant shot and killed Gabriel Juarez-Montanez, the ex-boyfriend of defendant's girlfriend, Kelsey Boodt, in Portage, Michigan, on July 25, 2017. Boodt testified at trial that she had told defendant that Juarez-Montanez had been violent with her in the past and that she was afraid of him. She also testified that defendant said he would kill Juarez-Montanez if he ever hurt her again. Boodt's coworker, Denise Marie Davis, testified that in July of the previous year Boodt had told her, in the presence of defendant, that Juarez-Montanez's family was threatening her. According to Davis, defendant was quiet, did not say that he was going to kill Juarez-Montanez, and said something like, "they not going to do nothing [sic]." Davis also testified that, a few days before this conversation, Juarez-Montanez had come to her workplace and that her coworkers had called the police because they were concerned for Boodt's safety.

Defendant's friend Elijah Bell and Boodt both testified that the shooting took place around 2:00 a.m. as they were sitting with defendant in a vehicle in the parking lot of his apartment complex, smoking marijuana. Boodt testified that she saw Juarez-Montanez walking toward the car "with his hands in a fist" like "he was going to swing on [defendant]" and warned defendant that Juarez-Montanez was approaching. Boodt testified that within "a blink of an eye," Juarez-Montanez opened the passenger door of the car where defendant was sitting; Boodt stated that it looked like Juarez-Montanez was going to hit defendant, but she could not see if Juarez-Montanez held anything in his hand. She testified that defendant produced a firearm and fired twice. When the shooting began, Boodt ran from the car to the apartment she shared with defendant. Approximately 20 to 25 minutes later, the police forced the door of the apartment open after they knocked repeatedly and she did not answer. The police later obtained a search warrant for Boodt's apartment and seized a revolver and two different kinds of ammunition; although defendant's fingerprints were found on the revolver, a forensic technician testified at trial that the revolver was not the gun used in the shooting, nor was the ammunition found in the apartment of the same caliber as that used in the shooting. The gun used in the shooting was never recovered.

Bell testified that he saw a man he had never seen before walking rapidly up to the car and that it appeared to him that the man had something in his hands that could have been a knife or a stick. He testified that defendant appeared scared when Boodt told him it was Juarez-Montanez, that defendant asked Boodt to drive away, but that she did not do so. Bell testified that he ran from the car when Juarez-Montanez opened the front passenger door and that, although he heard the two gunshots, he did not see who fired them.

Other witnesses at trial testified to hearing two gunshots on the night in question. A forensic technician testified that gunpowder residue was found inside the car, suggesting that at least one of the shots was fired while the gun was inside the car. A forensic medical examiner testified that Juarez-Montanez had died of two gunshot wounds to the chest; one of the bullets had passed through his right hand. The examiner testified that the wound in Juarez-Montanez's right hand indicated that the gunshot causing that wound was fired from less than three feet away while Juarez-Montanez's hands were held up in front of his body.

The trial court instructed the jury on the elements of first-degree murder, second-degree murder, and voluntary manslaughter; additionally, the trial court gave an extensive self-defense instruction. The jury convicted defendant as described. This appeal followed. After filing his claim of appeal, defendant moved this Court to remand for a *Ginther*[1] hearing on the issue of his trial counsel's alleged ineffectiveness, which this Court denied without prejudice to a panel of this Court determining whether remand was necessary on plenary review.[2]

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] See *People v Head*, unpublished order of the Michigan Court of Appeals, entered June 26, 2019 (Docket No. 346431).

## II. SELF-DEFENSE INSTRUCTION/INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that the trial court improperly instructed the jury regarding defendant's claim of self-defense, or in the alternative that his trial counsel was ineffective in failing to object to the instructions and in failing to request an additional instruction regarding defendant's presence in a vehicle at the time of the shooting. We disagree. We conclude that defense counsel waived appellate review of the instructional issue by affirmatively approving the jury instructions,[3] see *People v Kowalski*, 489 Mich 488, 503-504; 803 NW2d 200 (2011), but we will review the issue in the context of defendant's claim of ineffective assistance of counsel.

Whether effective assistance of counsel has been denied is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review for clear error the trial court's findings of fact and review de novo the ultimate constitutional issue. *Id*. Because no *Ginther* hearing was held, our review is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). We review de novo issues of statutory interpretation. See *People v Pinkney*, 501 Mich 259, 268; 912 NW2d 535 (2018).

To establish that trial counsel was ineffective, a defendant must show that counsel's performance was objectively unreasonable and that counsel's deficient performance prejudiced the defense. *People v Payne*, 285 Mich App 181, 188-189; 774 NW2d 714 (2009). Prejudice exists when a defendant is able to show a reasonable probability that, absent counsel's error, the result of the proceeding would have been different. *Id*. at 189. Counsel cannot be deemed ineffective for failing to raise a meritless argument. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

We conclude that any objection by defense counsel to the jury instructions given by the trial court, and any request for the additional instruction found in M Crim JI 7.16a, would have been meritless; therefore, defendant cannot show that his trial counsel was ineffective or that he was prejudiced.

A defendant is entitled to a properly instructed jury. *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "The trial court is required to instruct the jury with the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *Id*. To that end, jury instructions "must include all the elements of the offenses charged against the defendant

---

[3] After the trial court reviewed the final jury instructions with the attorneys, it asked, "Is there anything that we need to place on the record at this time?" Defense counsel replied, "No, your Honor." Additionally, after the trial court instructed the jury, it asked defense counsel if he had "[a]ny objections to the jury instructions as read?" Defense counsel replied, "No, your Honor." Defense counsel thus affirmatively approved the jury instructions, waiving any claim of error. See *People v Lueth*, 253 Mich App 670, 688; 660 NW2d 322 (2002) (holding that defense counsel waived any instructional error when counsel stated, "No, your honor," in response to the trial court's question whether there were any objections to the jury instructions as read); see also *People v Ortiz*, 249 Mich App 297, 311; 642 NW2d 417 (2001) ("Defendant affirmatively waived any errors when he specifically indicated to the trial court that he had no objections to the instructions *as given*.").

and any material issues, defenses, and theories that are supported by the evidence." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007) (citations omitted). Imperfect instructions are not in error if they fairly present the issues to be tried and sufficiently protect the defendant's rights. *People v Clark*, 274 Mich App 248, 255-256; 732 NW2d 605 (2007). Moreover, an instructional error is not grounds for reversal "unless refusal to take action appears to the court inconsistent with substantial justice." MCR 2.613(A); see also *People v Muhammad*, 498 Mich 909; 870 NW2d 729 (2015). A defendant bears the burden of proving that an error has resulted in a miscarriage of justice. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010).

A conviction for second-degree murder requires proof of a death, caused by the defendant's acts, with malice, and without justification. MCL 750.317; *People v Mendoza*, 468 Mich 527, 534; 664 NW2d 685 (2003). Defendant argued before the trial court in this case, and argues on appeal, that his act of shooting Juarez-Montanez was justified on grounds of self-defense. The self-defense statute, MCL 780.972(1)(a), provides that

> an individual who is not engaged in the commission of a crime at the time he uses deadly force may use deadly force against another individual anywhere he has the legal right to be with no duty to retreat if the individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself.

The trial court gave an extensive self-defense instruction. It explained defendant's self-defense theory of the case. It further instructed that defendant must have honestly and reasonably believed that he was in danger of being killed or seriously injured. And it instructed the jury that, in deciding if defendant's belief was honest and reasonable, it should consider all of the circumstances as they appeared to defendant at the time. The trial court further instructed that if a person acts in lawful self-defense, that person's actions are justified and he is not guilty of murder or homicide. Moreover, defendant did not have to prove that he acted in self-defense; instead the prosecution was required prove beyond a reasonable doubt that defendant did not act in self-defense. These instructions fairly presented the issues to be tried and sufficiently protect defendant's rights. See *Clark*, 274 Mich App at 255-256.

Defendant does not argue that any of the instructions given were incorrect; rather, he argues that the instructions erroneously failed to include an instruction on the rebuttable presumption found in MCL 780.951(1), and that his counsel was therefore ineffective in failing to object to the instructions as given and in failing to request an additional instruction on this presumption as found in M Crim JI 7.16a. We disagree.

MCL 780.951(1) provides in relevant part:

> [I]t is a rebuttable presumption in a civil or criminal case that an individual who uses deadly force . . . has an honest and reasonable belief that imminent death of, sexual assault of, or great bodily harm to himself or herself or another individual will occur if both of the following apply:

(a) The individual against whom deadly force or force other than deadly force is used . . . is unlawfully attempting to remove another individual from a dwelling, business premises, or occupied vehicle against his or her will.

(b) The individual using deadly force or force other than deadly force honestly and reasonably believes that the individual is engaging in conduct described in subdivision (a).

The related jury instruction, M Crim JI 7.16a, provides, in pertinent part, that if the jury finds both that: (1) the deceased was unlawfully attempting to remove a person from a vehicle against the person's will, and (2) the defendant honestly and reasonably believed that the deceased was unlawfully attempting to remove him from the vehicle, it is presumed that the defendant had an honest and reasonable belief that imminent death or great bodily harm would occur. The instruction further states that the prosecution may overcome this presumption by proving beyond a reasonable doubt that the defendant did not have an honest and reasonable belief that death or great bodily harm was imminent. M Crim JI 7.16a(1)(b).

There was no evidence or testimony presented at trial that Juarez-Montanez was attempting to remove defendant from the vehicle when defendant used deadly force. Boodt testified that Juarez-Montanez approached the vehicle and opened the front passenger door; Boodt believed that Juarez-Montanez was going to strike defendant. Additionally, Bell testified that he believed Juarez-Montanez may have had a stick or knife in his hand, and that he also saw Juarez-Montanez open the front passenger door. Neither eyewitness testified to believing that Juarez-Montanez was trying to remove defendant from the vehicle, or to any actions by Juarez-Montanez that might have led to such an inference. At best, the jury could have reasonably inferred that Juarez-Montanez sought to gain access to defendant to do him harm, which was in fact the argument defense counsel made at trial—defense counsel emphasized in his closing argument that "it is undisputed that Mr. Juarez[-Montanez] was attacking whoever the passenger was" and that in the "worst case" scenario, if the jury believed that defendant had been "attacked" and had known he was "just going to get punched," defendant could only be convicted of manslaughter. Defense counsel never argued or presented evidence that Juarez-Montanez was trying to remove defendant from the vehicle. And, similarly, there was no evidence presented to allow the jury to determine that defendant honestly and reasonably believed that Juarez-Montanez was trying to unlawfully remove him from the vehicle. Under the facts of this case, the instruction found in M Crim JI 7.16a(1)(b) was not applicable to any material issue, element or defense, and was not supported by the evidence. *Dobek*, 274 Mich App at 82. The instructions as given fairly presented the issues and sufficiently protected defendant's rights. See *Clark*, 274 Mich App at 255-256. Defense counsel was not ineffective for failing to raise a meritless argument. *Ericksen*, 288 Mich App at 201.

## III. GREAT WEIGHT OF THE EVIDENCE

Defendant also argues that the jury's verdict of second-degree murder was against the great weight of the evidence. We disagree. Defendant preserved this issue by moving for a directed verdict of either acquittal or voluntary manslaughter regarding his murder charge, which the trial court denied. *People v Patterson*, 428 Mich 502, 514-515; 410 NW2d 733 (1987).

Determination of whether a verdict is against the great weight of the evidence requires us to review the entire body of proofs. *People v Herbert*, 444 Mich 466, 475; 511 NW2d 654 (1993). Absent exceptional circumstances, however, this Court may not, and will not, substitute its view of the credibility of witnesses for that of the jury. See *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). When the question is one of "credibility posed by diametrically opposed versions of the events in question," the test of credibility must be left with the trier of fact. *Id*. at 646-647. "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*. "The hurdle that a judge must clear in order to overrule a jury and grant a new trial is unquestionably among the highest in our law." *Unger*, 278 Mich App at 232 (quotation marks and citation omitted).

Defendant argues that the evidence at trial supported his claim of self-defense, or at most manslaughter, but not his conviction of second-degree murder. The jury was presented with the evidence and received appropriate instructions regarding defendant's claim of self-defense, and was instructed on the elements of second-degree murder and voluntary manslaughter. Additionally, Boodt testified that defendant had previously stated that he would shoot Juarez-Montanez if he ever touched her again. The medical examiner testified that Juarez-Montanez was shot twice within close range, with one bullet passing through his hand before entering his chest as if his hand had been held in front of his body to protect himself. No weapon or item resembling a weapon was found in Juarez-Montanez's possession after the shooting, and defendant fled the scene and disposed of the gun he had used to shoot Juarez-Montanez. Although there was evidence that supported defendant's version of events, such as Bell's testimony that Juarez-Montanez may have been holding something like a knife or stick, and that defendant seemed scared when he heard who was coming towards the car, the evidence did not preponderate so heavily against the verdict as to constitute a miscarriage of justice. *Lacalamita*, 286 Mich App at 469; see also *Unger*, 278 Mich App at 223, 225-227 (noting that malice may be inferred from circumstantial evidence such as motive to kill and post-offense flight or lying). And, to the extent defendant's argument relies on the credibility of various eyewitnesses, he has not demonstrated that any of the extraordinary circumstances that would permit this Court to reweigh witness credibility are present. See *Lemmon*, 456 Mich at 642.

Further, although defendant does not raise a separate claim of prosecutorial misconduct in his statement of questions presented, he argues that the verdict was the result of "improper trial tactics" by the prosecution, including improperly questioning witness credibility by arguing facts not in evidence. We conclude that the prosecution did not commit misconduct or otherwise undermine confidence in the jury verdict. Because defendant did not raise this issue before the trial court, we review it for plain error affecting substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003)(citation omitted).

"Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *Unger*, 278 Mich App at 236. "They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id*. The prosecution may argue from the facts that a witness is credible or not; prosecutorial arguments

regarding credibility are not improper when based on the evidence. *Id*. at 240. However, the prosecution may not imply that it has some special knowledge of a witness's credibility. *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004).

In this case, the prosecution argued that Bell was untrustworthy because he lied to the police several times during their investigation. Bell testified that he initially told the police that he was not with defendant on the night of the shooting and that he had lied several times when questioned by police during the investigation. Furthermore, the prosecution noted that Bell did appear for court when he was subpoenaed, but only arrived after he spoke to defendant on the phone in the middle of the trial and was told that a warrant for his arrest had issued. The prosecution's argument that Bell was not credible was consistent with the evidence and reasonable inferences from that evidence. See *Unger*, 278 Mich App at 236.

Defendant also suggests that the prosecution improperly argued that Davis knew more than she had testified to and improperly stated that she had been intimidated into giving her testimony. The record shows that the prosecution pointed out inconsistencies in the Davis's testimony, and reminded the jury that the conversation that Davis was recalling had taken place more than a year before the trial. The prosecution also noted that as Davis was testifying, she was "smirking and shaking her head." All of these statements were based on facts in evidence. *Unger*, 278 Mich App at 236. Moreover, the prosecution did not state that Davis had been intimidated or influenced; the record shows that the prosecution properly stated that it was for the jury to determine Davis's credibility, and asked the jury to "think about" whether her demeanor suggested that she had been intimidated or influenced. The prosecution did not imply that it had special knowledge that Davis lacked credibility. *Thomas*, 260 Mich App at 455. And the prosecution was permitted to argue from the evidence that a witness is not to be believed. *Unger*, 278 Mich App at 236.

Additionally, as discussed, the jury was properly instructed regarding self-defense; defendant's argument that the allegedly improper instructions undermined the reliability of the verdict is merely a restatement of his arguments we have already addressed. And, just as with the self-defense claim, the mere fact that some evidence arguably supported a conviction for voluntary manslaughter rather than second-degree murder does not render the verdict a miscarriage of justice. We conclude that the evidence did not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand, see *Unger*, 278 Mich App at 232, and that defendant has failed to demonstrate plain error affecting his substantial rights. *Musser*, 259 Mich App at 218.

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL—SEARCH WARRANT

Defendant argues that defense counsel was ineffective in failing to move to suppress the evidence found in his and Boodt's shared apartment. We disagree.

"[A] basic principle of Fourth Amendment law [is] that searches and seizures inside a home without a warrant are presumptively unreasonable" and prohibited by the Fourth Amendment, absent probable cause or exigent circumstances. *Payton v New York*, 445 US 573, 586, 589-590; 100 S Ct 1371; 63 L Ed 2d 639 (1980) (quotation marks and citation omitted). "[T]he United States Supreme Court has articulated several exceptions wherein a warrantless search is reasonable and thus constitutional, including a search by police conducted as part of their community

caretaking function." *People v Slaughter*, 489 Mich 302, 310; 803 NW2d 171 (2011). "For the community-caretaking exception to apply, the actions of the police must be totally unrelated to the duties of the police to investigate crimes." *People v Hill*, 299 Mich App 402, 406; 829 NW2d 908 (2013), citing *Slaughter*, 489 Mich at 314. Rendering aid to persons in distress is a community-caretaking function. *People v Davis*, 442 Mich 1, 23; 497 NW2d 910 (1993) (stating that "entries made to render aid to a person in a private dwelling [are] part of the community caretaking function"). "The police must be primarily motivated by the perceived need to render assistance or aid. . . ." *Hill*, 299 Mich App at 406. An entering officer is required to possess specific and articulable facts that lead him or her to the conclusion that a person inside a home is in immediate need of aid. *Davis*, 442 Mich at 25. "Proof of someone's needing assistance need not be 'ironclad,' only 'reasonable.' " *Hill*, 299 Mich App at 406. "[T]he entry must be limited to the justification therefor, and the officer may not do more than is reasonably necessary to determine whether a person is in need of assistance, and to provide that assistance." *Davis*, 442 Mich at 26.

"A search warrant may only be issued upon a showing of probable cause." *Unger*, 278 Mich App at 244. "Probable cause to issue a search warrant exists if there is a substantial basis for inferring a fair probability that contraband or evidence of a crime exists in the stated place." *Id*. "A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Id*. at 243. Our review of a magistrate's determination whether probable cause existed to support a search warrant requires us to "ask only whether a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause." *Id*. at 244 (quotation marks and citation omitted).

The fruit of the poisonous tree is an exclusionary rule for evidence discovered in an unlawful search or seizure, whether conducted under a warrant or not. *People v Maggit*, 319 Mich App 675, 693; 903 NW2d 868 (2017). However, this exclusionary rule does not apply when the police conduct a search in "objectively reasonable reliance" on a warrant later held invalid. *Hill*, 299 Mich App at 413.

Defendant argues that the police officers' initial warrantless entry into the apartment was invalid. We disagree. Officers testified about specific and articulable facts leading them to believe that Boodt may have been in immediate need of aid. See *Davis*, 442 Mich at 25. Officer Nathan Belen of the Kalamazoo Department of Public Safety testified that after officers spoke to residents of the neighborhood near where the shooting occurred, Officer Belen and several other officers were told that Boodt was Juarez-Montanez's ex-girlfriend and were told to locate her. He further testified that "the contact was to check her welfare and to make sure that she was ok." When the officers knocked and announced their presence for several minutes at Boodt's door without a response, a police sergeant on the scene made the decision to force the door open. Once inside, the officers located Boodt and confirmed that no one else was inside the apartment. This warrantless entry at least arguably qualifies for the community caretaker exception, *Hill*, 299 Mich App at 406, *Slaughter*, 489 Mich at 310, such that defendant has not demonstrated that his counsel was not ineffective for failing to pursue a likely futile motion. See *People v Brown*, 279 Mich App 116, 142; 755 NW2d 664 (2008).

Once inside the apartment, the officers did not seize any evidence, but did note a red sweatshirt on a couch. At least one witness told police she had seen a man in a red sweatshirt entering Boodt's building with her after the shooting. On the basis of this evidence, the officers

applied for and obtained a search warrant. The officers then re-entered the apartment. Deferring to the decision of the magistrate as this Court must, we conclude that "a reasonably cautious person could have concluded that there was a 'substantial basis' for [a] finding of probable cause" that evidence related to Juarez-Montanez's shooting could be found inside the apartment. See *Unger*, 278 Mich App at 244.

Further, even if the search warrant was later deemed invalid, there was no evidence produced at trial that the investigating officers' reliance on the search warrant was objectively unreasonable or in bad faith. See *Hill*, 299 Mich App at 413. Defendant has not demonstrated that his counsel was ineffective for failing to pursue a motion to suppress. See *Brown*, 279 Mich App at 142. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy. *People v Mutuszak*, 263 Mich App 42, 58; 687 NW2d 343 (2004).

In any event, even assuming that defense counsel would have succeeded had he moved to suppress the revolver and ammunition found in the apartment, defendant has not shown that his counsel's failure to file such a motion, or object to the introduction of the evidence on other grounds at trial, was outcome-determinative. As discussed, the revolver was not the weapon used in the shooting, nor was the ammunition of the caliber used in the shooting. In fact, in cross-examining Boodt about the revolver, defense counsel was able to elicit testimony that was damaging to her credibility, i.e. that she had lied to police about where she had obtained the gun. Moreover, although the prosecution argued that the jury could find that defendant had possessed the revolver, based on his fingerprints and its location near personal items of defendant, it also argued that the evidence showed that defendant had possessed the handgun used to kill Juarez-Montanez. Boodt testified that she saw defendant pull a handgun from his waistband before the shooting. And the jury convicted defendant not only of murder and felon-in-possession, but of CCW; the prosecution's only argument from the evidence regarding CCW was that defendant had concealed and carried the gun used to kill Juarez-Montanez. Defendant has not demonstrated that without the evidence relating to the items found in the apartment, the outcome of the proceedings against him would have been different. *Anderson*, 322 Mich App at 628.

Affirmed.

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Mark T. Boonstra